**TDI** | **Texas Department of Insurance**

RECEIVED

PO Box 149104 | Austin, TX 78714 | 1-800-578-4677 | tdi.texas.gov

LEGAL DEPARTMENT

RECEIVED

NOV 07 2018

AIG Commercial Insurance
Law Department

October 31, 2018

USPS Certified Mail No.
9214 8901 9403 8374 6464 24

Alexander R. Baugh, Chairman
Lexington Insurance Company
99 High Street, Fl. 23
Boston, MA 02110-2378

Re:  Cause No.: 2018CCV-61616-3; styled *Sandpiper Condominium Council of Co-Owners, Inc. v. Lexington Insurance Company;* in the County Court at Law #3, Nueces County, Texas

Dear Sir:

Service of Process has been requested through the Commissioner of Insurance.  Enclosed please find citation and Plaintiff's First Amended Petition and Requests for Disclosure in the above referenced matter.  These documents were served upon the Commissioner of Insurance on October 22, 2018.

Sincerely,

Tish Wilhelm
General Counsel Division
(512) 676-6543

AIG Property Casualty
Claims Legal

NOV 08 2018

RECEIVED

*COPY*

A
I
G

O
L
O
1
:
S
e
s
s
1

1
/
1
8
/
2
0
1
8

**Citation for Personal Service – Commissioner of Insurance**

## Case Number: 2018CCV-61616-3

### THE STATE OF TEXAS

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney *do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the* expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

**TO:  Lexington Insurance Company,  99 High Street,  Boston, MA  02110**

the Defendant by serving in __**DUPLICATE**__ copies to the **THE TEXAS COMMISSIONER OF INSURANCE, CHIEF CLERK OFFICE, 333 GUADALUPE, MC 113-2A, P.O. BOX 149104, AUSTIN, TEXAS 78701.**

GREETING:  You are commanded to appear by filing a written answer to the Plaintiff's First Amended Petition And Requests For Disclosure at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the **Honorable Deeanne Galvan, County Court at Law #3** of Nueces County, Texas at the Courthouse of said County in Corpus Christi, Texas.  Said Amended Petition was filed on the 10th day of October, 2018. A copy of same accompanies this citation.

The file number of said suit being Number:  **2018CCV-61616-3**

The style of the case is:  **Sandpiper Condominium Council of Co-Owners, Inc.  vs.  Lexington Insurance Company**

Said petition was filed in said court by **William J. Chriss** attorney for Plaintiff, whose address is **606 N Carancahua St., Ste. 1511, Corpus Christi, Texas  78401.**

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirement of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said court at Corpus Christi, Texas, this **18th day of October, 2018.**

**ANNE LORENTZEN, DISTRICT CLERK**
NUECES COUNTY, TEXAS
901 LEOPARD STREET, ROOM 313
CORPUS CHRISTI, TEXAS 78401

BY: *Nicole Hinojosa*    , Deputy
Nicole Hinojosa

## RETURN OF SERVICE

**2018CCV-61616-3**          **SANDPIPER CONDOMINIUM COUNCIL**          COUNTY COURT AT LAW #3
                             **OF CO-OWNERS, INC.**
                             **VS.**
                             **LEXINGTON INSURANCE COMPANY**

Name _____

**ADDRESS FOR SERVICE**
**Lexington Insurance Company, 99 High Street, Boston, MA  02110**

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20_____, at _____ o'clock ____. m., and executed in
_____ County, Texas by delivering to the within named defendant in person, a true copy of this citation with the
date of delivery endorsed thereon, together with the accompanying copy of the _____
_____, at the following times and places, to-wit:

| NAME | DATE/TIME | PLACE, COURSE & DISTANCE FROM COURTHOUSE |
|------|-----------|-------------------------------------------|
|      |           |                                           |

And not executed as to the defendant(s), _____
The diligence used in finding said defendant(s) being:

_____

and the cause of failure to execute this process is:

_____

and the information received as to the whereabouts of said defendant(s) being:

_____

Fees:                                          _____, Officer
Serving Petition and Copy    $_____        _____, County, Texas
Total                        $_____        By _____, Deputy

### COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.

In accordance with Rule 107:  The officer or authorized person who serves, or attempts to serve, a citation shall sign the return.  The
signature is not required to be verified.  If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the
return shall be signed under penalty of perjury and contain the following statement:
"My name is _____, my date of birth is _____, and my
            (First, Middle, Last)
address is _____
            (Street, City, State, Zip, Country)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.
Executed in _____ County, State of _____, on the _____ day of
of _____, 20_____.

_____
Declarant / Authorized Process Server

_____
ID# & Expiration of Certification

Filed
10/10/2018 5:07 PM
Anne Lorentzen
District Clerk
Nueces County, Texas

## CAUSE NO. 2018CCV-61616-3

| | | |
|---|---|---|
| SANDPIPER CONDOMINIUM | § | IN THE COUNTY COURTS |
| COUNCIL OF CO-OWNERS, INC. | § | AT LAW |
| | § | |
| V. | § | COUNTY COURT #3 |
| | § | |
| LEXINGTON INSURANCE | § | |
| COMPANY | § | NUECES COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW SANDPIPER CONDOMINIUM COUNCIL OF CO-OWNERS, INC.,
Plaintiff, and files this Amended Petition against the above-named Defendant and would
respectfully show the Court the following:

I.

Pursuant to Rule 190, T.R.C.P., discovery is intended to be conducted under Level 3.

II.

Plaintiff is a Texas corporation domiciled in Nueces County, Texas. All events material to
this lawsuit occurred in Nueces County, Texas. Plaintiff sues in all capacities it is authorized to
appear, including but not limited to as named insured and payee on a policy of insurance and
pursuant to its rights and authority to sue in behalf of its owners pursuant to statute, contract, or
condominium documents and regime.

III.

Lexington Insurance Company (hereinafter "Lexington") is an insurance corporation,
association, company, or partnership that at all pertinent times herein has done insurance business in
this state, or else it is another entity that at all pertinent times herein has done insurance business in
this state. The insurance business done by it in Texas, whether through agents or directly, includes,
but is not limited to, the following:

1

(a)   The making and issuing of contracts of insurance with the Plaintiff;

(b)   The taking or receiving of applications for insurance, including the Plaintiff's application for insurance;

(c)   The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and,

(d)   The issuance or delivery of contracts of insurance to residents of this state or to persons authorized to do business in this state, including the Plaintiff.

(e)   Adjusting and investigating, or pretending to adjust and investigate, claims made by policyholders such as the Plaintiff.

The Defendant is an "individual, corporation, association, partnership, or other legal entity engaged in the business of insurance," and each constitutes a person as that term is defined in Article 21.21 of the Texas Insurance Code, recently re-codified as Section 541, et. seq. of the Texas Insurance Code.

Lexington Insurance Company may be served by serving by certified mail, return, receipt requested, its registered, legal, and/or contractually appointed agent for service of process, the Texas Commissioner of Insurance, with duplicate process forwarded by mail by said official to Lexington's designated agent for such purpose:

Counsel
Legal Department
Lexington Insurance Company
99 High Street
Boston, MA 02110

Such service is hereby requested, and the clerk is requested to issue and serve duplicate copies of such process upon the Commissioner of Insurance of the State of Texas in accordance with his procedures and relevant law. The Commissioner of Insurance is requested to forward such process to Defendant as indicated above and provided by law and by the relevant insurance policy. The Commissioner's $50 fee for accomplishing service is paid, along with the clerk's

fees, upon the filing of this petition, and the clerk will remit such sum to the Commissioner together with duplicate process.

## IV.

Venue as to this petition is proper in Nueces County, Texas in that all or part of Plaintiff's causes of action accrued in such county and the property which is the subject of this suit is located in such county. This Honorable Court has jurisdiction of the case, and the Plaintiff here invokes the unlimited monetary jurisdiction of this Court by filing the suit with the district clerk according to state law and local rule. The damages sought by this suit are within the jurisdictional limits of the court. Under Rule 47, T.R.C.P., Plaintiff here states that Plaintiff seeks monetary relief over $1 million.

## V.

Several months prior to Hurricane Harvey, Defendant issued an insurance policy or policies covering or purporting to cover Plaintiff's property from certain forms of hurricane damage. The policy in effect at the time of these losses purported to insure the property against losses above a deductible amount of $4.3115 million, up to a limit of over $27 million. Such policy insured the Plaintiff from building damage, damage to structures, personal property damage, and loss of income.

## VI.

While the policy or policies were in effect, and on or about August 25, 2017, Hurricane Harvey made landfall on Padre Island causing serious damages to many structures. One of the buildings which suffered serious covered damage from the storm was the Sandpiper condominium complex on Padre Island. Plaintiff is the named insured under the above policies and insures the property in behalf of itself and it members, the owners of the building complex, who are also insureds. This damage included wind damage and damage caused by the resulting

3

entry of water into the building, and/or other covered damage and/or loss, including loss of income. Wind directly damaged the building and storm winds made openings in the structure through which water entered. Covered hurricane damage occurred within the limits of the Defendant's policy. Such damage far exceeded $4.3115 million in amount, and any insurance policies insuring that $4.3115 million deductible have long since been exhausted by payment. Plaintiff has the legal and/or contractual responsibility to repair the condominium complex after a natural catastrophe such as Hurricane Harvey.

VII.

Meanwhile, Defendant and those liable with it had and have a duty to diligently, promptly, and fairly investigate the loss or losses at Sandpiper under relevant contract, Texas insurance law, and regulation, and to report promptly to Plaintiff. They wrongfully failed to do so, and Plaintiff's claims for hurricane damage benefits under such insurance, which amount to at least $9.6 million in amount even after accounting for any deductibles, remain unpaid in whole or in part and/or have been denied. For example, on or about July 24, 2018 and eleven months after the storm, Defendant rejected in writing Plaintiff's claim made by written demand and proof of loss without first requiring any additional information with which to evaluate such claim. Before such denial, Defendant had made earlier payments of a total of $4,038,718.12, leaving a denied covered loss of over $5.5 million. As of the date of Plaintiff's demand and proof of loss, at least $3.8 million of such demand was currently owed and past due under the policy. Defendant, although presented with such claim on or about June 27, 2108, denied such claim in writing more than 30 days ago. This constitutes failing to pay such written claim for more than 60 days after receipt of the claim and all information deemed by the Defendant reasonably necessary to make such denial. Defendant did not request additional time to make such decision, nor any additional information it claimed to be necessary prior to making it.

4

A
I
G

O
L
0
1
:
S
e
s
s

1

1
1
/
8
/
2
0
1
8

VIII.

Even when confronted with the inadequacies of its prior investigations and adjustments and the wrongfulness of their claims denials and failures and refusals to pay, Defendant continues to refuse to voluntarily and unconditionally pay any amounts owed, even amounts it has long admitted it is reasonably clear it is or will be liable for.

IX.

During the term of said policies, Plaintiff sustained covered losses in the form of hurricane damage, windstorm damage, and water damage, and damages resulting therefrom, and Plaintiff promptly reported same to Defendant and its agents, pursuant to the terms of the insurance policies. Defendant failed to properly and promptly investigate, estimate, and pay Plaintiff's claims for clearly covered property damage and/or loss of income.

X.

Despite the fact that all conditions precedent to Plaintiff's recovery have been performed or have occurred, Defendant has failed and refused to pay the Plaintiff a just amount in accordance with contractual obligations, agreements, and representations. Defendant has, by its conduct, breached its contract of insurance with the Plaintiff. Such breach also proximately caused damages to the Plaintiff, consequential and otherwise. In addition, Plaintiff is entitled to recover attorneys' fees in connection with the contractual causes of action. All of the conditions precedent to bringing this suit under the policy and to Defendant's liability to the Plaintiff under the policy for the claims alleged have been performed or have occurred.  All notices and proofs of loss were timely and properly given in such manner as to fully comply with the terms and conditions of the relevant insurance policies and applicable law.  In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, or requirements, the Defendant waived them, is estopped from asserting them, and/or the Plaintiff substantially complied with them.  Plaintiff makes the same allegations of

5

waiver or estoppel as to every defense or exclusion pleaded by any adverse party. For example, and by way of illustration only, the refusal to pay Plaintiff's claims under the policy amounts to a conclusive waiver of the performance by Plaintiff of any and all conditions, procedures, or covenants in the policy, and a conclusive estoppel for Defendant to rely upon any of them in any way. In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, procedures, or requirements, or as to any claim of wrongful or inadequate conduct or communication by Plaintiff, the Defendant is prohibited from asserting them or is estopped to rely on them by relevant law. Moreover, as to the policy exclusions or other matters of avoidance pleaded by Defendant, such as any replacement cost limitation or condition in the policy, Plaintiff would show that Defendant has waived or is estopped to assert any limitations contained in such provisions because of Defendant's conduct in refusing to pay Plaintiff's claim, substantially breaching the contract and/or making such condition impossible or unreasonably difficult to perform such that Plaintiff is excused from compliance. Plaintiff alleges the contract has been breached and sues for all sums due at any time for this occurrence, including full replacement cost and future liability and damages from such breach that are probable or reasonably clear.

XI.

Within days after the storm, Defendant, through their agents, received a "notice of claim" as that term is defined by Section 542.051 of the Texas Insurance Code. Plaintiff alleges in the alternative that Defendant and their claims agents failed to follow the requirements and time limits of Section 542.051, et. seq. also known as the Prompt Payment of Claims Statute with respect to the claims that are the subject of this suit, and that therefore Defendants owe statutory damages or percentage penalties and attorneys' fees under such code provisions. As one example, Lexington received Plaintiff's written proof of loss and denied the claim thereby made, refusing to pay any amount of such claim for more than 60 days. Lexington's refusal for over 60 days to pay the entire

A
I
G

O
L
0
1
:
s
e
s
s
1

1
1
/
8
/
2
0
1
8

claim upon presentment by demand and proof of loss constitutes failing to promptly pay for 60 days under Section 542.060 of the same statute after having all information it deemed necessary to make a decision on such claim.

## XII.

Defendant and their agents visited and viewed Plaintiff's insured property in Nueces County, Texas, in connection with Plaintiff's claims of property damage and income loss. Defendant knew or should have known that Plaintiff had sustained significant damage to the property in excess of all relevant deductibles and requiring significant repairs as a result of a loss and peril covered by the insurance policies. Defendant knew and continues to know that a substantial covered loss was and is owed. Nonetheless, Defendant and their agents denied, delayed, or failed to pay or properly investigate some or all of Plaintiff's covered claims with no reasonable basis. Defendant failed or refused to pay any amount long after knowing substantial sums were owed even based upon their own faulty investigation and calculations, and even after acknowledging this in writing. Defendant has failed to act promptly or to conduct a good faith reasonable investigation. This is bad faith claim delay and/or denial and a violation of Articles 21.21 and 21.55 of the Texas Insurance Code, recently re-codified as Sections 541 and 542, et. seq. During the term of said Defendants' policy, Plaintiff sustained covered losses in the form of hurricane damage, windstorm damage, and water damage, and damages resulting therefrom, and Plaintiff promptly reported same to Defendants and their respective agents pursuant to the terms of the insurance policy. Defendants failed to properly and promptly investigate, estimate, and pay Plaintiff's claims for clearly covered property damage. Plaintiff would show that Defendants breached their legal and contractual duties and as a result of this, they proximately caused damages to the Plaintiff, including consequential damages in the form of additional income losses and/or the necessity to do additional repairs.

7

XIII.

Lexington's obligation to promptly investigate, estimate, and pay for the damage above $4.3115 million was clear as soon as it was clear that the damage to the building was severe enough to exceed the deductible, which should have been obvious to any fair-minded and experienced adjuster or insurance professional soon after the storm.

However, it took Lexington and it adjusters and agents over seven months to come up with an evaluation and estimate of the damage. That estimate, inadequate though it was, confirmed that Lexington owed Sandpiper millions of dollars for building damage, as well as the limits of the policy for loss of income. Although Sandpiper has executed all the proofs of loss requested by Lexington in order to receive advance payments of its ultimate liability, neither Lexington nor its agents requested from Sandpiper any proof of loss on the total building damage. Nonetheless, Sandpiper submitted documentation of at least $1.2 million in additional unpaid building loss as per Lexington's adjuster's own calculation/spreadsheet, and also evidence of extensive damage to window and door systems throughout the building that Plaintiff' continuing investigation estimates will cost a minimum of an additional $3 million to repair. In addition, building elements that should have been torn out and removed were not, even though this process was performed under the direction of Lexington and its adjusters and agents. Defendant owes Plaintiff in excess of $5.5 million under the relevant policy.

Plaintiff contends that Lexington has failed to meet the deadlines established in the Texas Insurance Code without good cause, has rejected and failed to pay a claim or a portion thereof without conducting a reasonable investigation with respect to the claim, and has denied coverage for, or refused to pay, a claim when liability has become reasonably clear. Plaintiff also alleges that Lexington's conduct has been unconscionable. It has been a year since Hurricane Harvey hit, and Lexington's policies and Texas law required it to promptly investigate and immediately pay

8

*the full amount* of covered damage without need for supplementation and without the policyholder needing to spend so much of its own time and money doing Lexington's job of investigating and quantifying the amount it owes. Lexington failed to meet these requirements and breached the insurance policy contract. Such breaches proximately caused damages to Plaintiff, including expenses, policy benefits owed or recoverable as a result of the storm, and consequential damages that include consequential damage to the building.

Lexington's job was not to direct repairs and to then pay contractors and consultants of its choosing or reimburse its customer for expenses it was forced by Lexington to incur. Rather, Lexington should have promptly estimated and paid the full amount of the loss before its customer was forced to pay out any substantial sums for permanent repairs. Lexington also should have investigated, understood, and determined the full scope of the damage and necessary repairs and paid for them, so the customer could then select and retain a contactor of its choosing. Instead, Lexington and its adjusters and agents directed an open-ended repair process while knowingly or negligently refusing to do all that was needed to repair the building, ignoring its own consultant's advice, and placing Sandpiper in jeopardy of not being fully compensated for the job underway, even though that job had already begun based on Lexington's misrepresentation that it would see to it that all covered damage was repaired at Lexington's ultimate expense.

Lexington and its adjusters adjusted this loss based on an inadequate repair cost figure and they delayed paying rental income losses long after it was clear that such amounts were due and/or that the limits of the policy would be owed, thus exacerbating the situation and economic losses at Sandpiper. Plaintiff claims that Texas Insurance Code Article 542.055, et. seq. has been violated, in addition to Chapter 541 and the Texas Deceptive Trade Practices Act. Because of Lexington's breach of contract and the delay and inadequacy of its investigation and repair plan, Sandpiper has

9

had to pick up where Lexington left off and determine for itself the full nature and amount of the loss above the $4.3115 deductible. This has now resulted in damage to Sandpiper in the amount of the costs of such investigation into the full scope of damage and the correct scope and method of repairs. It appears that Lexington and its agents directed and controlled the repairs at Sandpiper and thereby ensured that inadequate and incomplete repairs would be done and that the true amount of the covered loss would be concealed or understated and Lexington and/or its agents refused to pay for covered items of damage even though recommended to do so by consultants of their own choosing.

XIV.

Defendant's denial, delay, refusal and/or failure to pay constitute material breaches of contract and were and are in bad faith and constitute a breach of the covenant of good faith and fair dealing, which breaches were proximate and producing causes of damages to the Plaintiff more specifically set forth herein.  There was no reasonable basis for Defendant's actions, and the Defendant knew or should have known that there was no such reasonable basis to deny, delay, and fail to pay the entirety of such claims.  Furthermore, the conduct of Defendant and its agents amounts to one or more of the following:

a.  Violations of Chapter 541, Texas Insurance Code, including misrepresentation indicated herein and not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear in violation of Art. 541.060 of the Texas Insurance Code, Section (a)(2);

b.  Refusing to pay claims without conducting a reasonable investigation based upon all available information in violation of Art. 541.060 of the Texas Insurance Code, Section (a)(7);

10

A
I
G

O
L
0
1
:
s
e
s

1

1
1
/
8
/
2
0
1
8

c. *Failing to handle, investigate, or process the Plaintiffs' claims in good faith; in violation of* common law as expressly stated by the Texas Supreme Court in *Vail v. Texas Farm Bureau,* 754 S.W.2d 129 at 135 (Tex. 1988);

d. *Violations of the Texas Deceptive Trade Practices Act, including misrepresentation* indicated herein and committing a course of conduct that is unconscionable;

e. Refusing to pay a claim without a reasonable basis in violation of common law;

f. *Delaying payment of a claim without a reasonable basis in violation of Chapter 541 and* common law;

g. Denying and/or delaying payment of a claim without determining whether there is any *reasonable basis to do so in violation Chapter 541 and common law;*

h. Failing within a reasonable time to affirm or deny coverage and failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the *facts or applicable law, for the insurer's denial of a claim in violation of Chapter 541 of the* Texas Insurance Code;

i. Breach of contract;

j. Negligence and/or gross negligence, including in the discharge of duties partially performed or voluntarily undertaken to supervise, direct, or participate in repair of construction activities on the Sandpiper property; or

k. *Other violations of law.*

XV.

As a result of all of such conduct, Plaintiff has been damaged in an amount in excess of the *minimum jurisdictional limits of this Court. In addition, the conduct of Defendant was committed* knowingly, and under circumstances constituting willful and wanton and reckless disregard of the rights of the Plaintiff and others similarly situated. It was negligent and tortious and grossly

11

negligent and included misrepresentation. The conduct of Defendant proximately caused injury and consequential damages to the Plaintiff.

XVI.

In order to prosecute this action against the adverse parties, Plaintiff has been required to retain the services of the undersigned attorneys and will incur the fees and expenses of said attorneys in regard to this action. Accordingly, pursuant to Chapters 37 and 38 of the Texas Civil Practice & Remedies Code, and under several other relevant statutes applicable to the conduct and causes of action alleged herein, including Chapters 541 and 542 of the Texas Insurance Code. Plaintiff is entitled to recover its reasonable and necessary attorneys' fees incurred through trial and any appeal. The claim has been presented and pre-suit notice has been timely and properly given under the policy and all relevant statutes, including Texas Insurance Code Section 542A. *Such notice is attached as Exhibit A. Lexington has opted in response to such notice to: a)* decline to inspect, photograph, or evaluate the property that is the subject of the insurance claim although repeatedly invited to do so, and: b) accept responsibility and liability for all its adjusters and agents under Section 542A, such that Lexington is liable as a matter of law for their acts in connection with the underlying insurance claims, including but not limited to their negligence and gross negligence described above.

XVII.

**STATUTORY AND COMMON LAW CLAIMS**

All the above alleged breaches of duty proximately caused damages to the Plaintiffs, consequential and otherwise, in an amount in excess of the minimum jurisdictional limits of this Court. In addition, Plaintiffs are entitled to recover attorneys' fees in connection with the *bringing of this action for breach of contract or under relevant statute.* Plaintiffs assert all statutory claims, demands, and causes of action assertable under Texas law from the pleaded

12

scenario and facts. All notices required by law or contract have been timely and properly given or else are excused, waived,   moot, or made unnecessary by the circumstances and/or Defendants' conduct, including by way of waiver or estoppel.

XVIII.

## REQUESTS FOR DISCLOSURE

Pursuant to Rule 194, you (the Defendant) is requested to disclose, within 30 days of service of this request, the information or material described in Rule 194.2, subsections (a) through (k) of the Texas Rules of Civil Procedure. Each adverse party is advised that, under Rule 194.3, if it is served with this request before its answer is due, it need not respond until 50 days after service of the request but must do so by that time.

XIX.

## JURY DEMAND AND PRAYER

Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff demands a jury trial and tenders to the Clerk of the Court the statutory jury fee.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, SANDPIPER CONDOMINIUM COUNCIL of CO-OWNERS, INC. prays that the Defendant be cited to appear, and that on final trial, Plaintiff have judgment or other court action against such party in the following respects:

A.   For recovery of the claim and benefits owed and unpaid by Defendant under the insurance policy or policies against those alleged liable under it or in connection with it, together with attorney's fees and other damages appurtenant to and part of such causes of action;

B.   For damages against Defendant for breach of such policy contract or contracts in the amount of policy benefits withheld, together with attorney's fees and other damages, direct or consequential, appurtenant to and part of such causes of action for breach;

13

A
I
G

O
L
0
1
:
s
e
s
s
1

1
1
/
8
/
2
0
1
8

C.   For statutory and tort damages, actual, consequential, special, caused by the conduct alleged herein;

D.   For additional or punitive damages as allowed by law;

E.   For statutory damages for violation of the Texas Prompt Payment of Claims Act;

F.   For prejudgment and post-judgment interest and attorney's fees as allowed by law.

In the alternative, Plaintiff prays, moves and respectfully requests this Honorable Court that upon final hearing and trial hereof, this Honorable Court grant to the Plaintiff such relief that it may be entitled to because of the facts and circumstances set forth above or in any amended pleading, including damages or other relief either general or special, including judgment against all adverse parties for costs of suit, for statutory penalties and prejudgment and post-judgment interest, as and if allowed by law.

Respectfully submitted,

**THE SNAPKA LAW FIRM**
606 N. Carancahua, Suite 1511
P.O. Box 23017
Corpus Christi, Texas 78403
Telephone: (361) 888-7676
Facsimile: (361) 884-8545

*/s/ William J. Chriss*
**William J. Chriss**
State Bar No. 04222100
Email: wjchrisspc@gmail.com
**Kathryn Snapka**
State Bar No. 18781200
Email: ksnapka@snapkalaw.com
**ATTORNEYS FOR PLAINTIFF**

14

# EXHIBIT A

## WILLIAM J. CHRISS, P.C.
*of counsel to*
### The Snapka Law Firm

WILLIAM J. CHRISS, J.D., Ph.D. [History]

Board Certified
Civil Trial Law and
Personal Injury Trial Law
Texas Board of Legal Specialization

606 N. Carancahua St.
Suite 1511
Corpus Christi, Texas
78401
361-884-3330
wjchrisspc@gmail.com

June 27, 2018

Lexington Insurance Company
99 High Street
Boston, MA 02110 by Fedex and CMRRR

And via email to your representative
John O'Keefe
York Risk Services Group
100 Town Square Place
Suite 402
Jersey City, NJ 07310
john.okeefe@yorkrsg.com

York Risk Services Group by Fedex and CMRRR
100 Town Square Place
Suite 402
Jersey City, NJ 07310

And via email to its representative
John O'Keefe
john.okeefe@yorkrsg.com

Re: Sandpiper Condominium Council of Owners, Inc. Hurricane Harvey Insurance claims
        Policy No. LHD900512
        Company Claim# 7030114449
        Property Address: 720 Beach Access Rd. 1A, Port Aransas, TX 78373

Dear Lexington Insurance Company:

    We represent Sandpiper Condominium Council of Owners, Inc. (hereafter referred to as "Sandpiper"), your named insured under the above referenced policy. Our client's claim for damage from Hurricane Harvey was delivered to you on or before August 30, 2017. Since that time, Sandpiper has provided you all documents you have reasonably requested, including much documentation from which you should have determined long ago that substantial benefits are owed under your policies for damage to the buildings and for rental income loss. In fact, you

A
I
G

O
L
0
1
:
s
e
s
s
1

1
1
/
8
/
2
0
1
8

Sandpiper  notice letter
June 27, 2018
2 | P a g e

have already paid the $2.03 million limits of your policy for income loss and advanced approximately $2 million dollars more than the $4.3115 million deductible in building damage after applying a depreciation factor of approximately 15% on the total replacement cost you calculated. However, these payments and calculations, over an extended period of approximately nine months, are inadequate to pay the storm insurance benefits owed.

Your policy insures the main building of Sandpiper for losses in excess of a deductible of $4.3115 million up to your building limit of $27,911,701. This means that once damage is done to the building in excess of $4.284 million, you are responsible to pay for that damage until your limit is exhausted. As witnessed by your partial payments prior to exhaustion of the TWIA policy, your obligation is triggered by damage in excess of the deductible without regard to whether Sandpiper has any other source of payment or reimbursement for that deductible. In this case, TWIA insured Sandpiper's deductible, but that is a separate matter between Sandpiper and TWIA. Your obligation to pay has nothing to do with TWIA and what it does or doesn't pay or when; it is triggered by damage in excess of the deductible, not by TWIA paying the deductible. Your obligation to promptly investigate, estimate, and pay for the damage above $4.3115 million was clear as soon as it was clear that the damage to the building was severe enough to exceed the deductible, which should have been obvious to any fair-minded and experienced adjuster, or insurance professional soon after the storm.

However, it took your personnel over seven months to come up with an evaluation and estimate of the damage. That estimate, inadequate as it is, confirmed that you owed Sandpiper at least $3 million for building damage in addition to the limits of your coverage for loss of income. Although Sandpiper has executed all the proofs of loss requested by you in order to receive advance payments of your ultimate liability, neither you nor your agents has requested from Sandpiper any proof of loss on the total building damage. Nonetheless, Sandpiper has submitted documentation of at least $1.2 million in additional building loss as per your adjuster's own calculation/spreadsheet, and also extensive damage to window and door systems throughout the building that our continuing investigation estimates will cost a minimum of an additional $3 million to repair. In addition, building elements that should have been torn out and removed were not, even though this process was performed under your direction.

We are submitting with this letter a preliminary proof of loss reflecting Sandpiper's current best information and belief concerning the amount of the loss. Our investigation reflects that the covered building loss from Hurricane Harvey exceeds $12 million dollars in amount.

We contend that you have failed to meet the deadlines established in the Texas Insurance Code without good cause, have rejected and failed to pay a claim or a portion thereof without conducting a reasonable investigation with respect to the claim, and have denied coverage for, or refused to pay, a claim when liability has become reasonably clear. We also allege that your conduct has been unconscionable. It has been almost nine months since Hurricane Harvey hit, and your policies and Texas law required you to promptly investigate and immediately pay *the*

Sandpiper notice letter
June 27, 2018
3 | P a g e

*full amount* of covered damage without need for supplementation and without the policyholder needing to spend so much of its own time and money doing your job of investigating and quantifying the amount you owe. You failed to meet these requirements and have breached the insurance policy contract. Your job is not to direct repairs and then pay contractors and consultants of your choosing or reimburse your customer for expenses it is forced by you to incur. Rather, you should have promptly estimated and paid the full amount of the loss before your customer was forced to pay out any substantial sums for permanent repairs. You also should have investigated, understood, and determined the full scope of the damage and necessary repairs and paid for them, so the customer could then select and retain a contactor of its choosing. Instead, you directed an open-ended repair process while knowingly refusing to do all that was needed to repair the building, ignoring your own consultant's advice, and placing Sandpiper in jeopardy of not being fully compensated for the job underway, even though that job had already begun based on your misrepresentation that you would see to it that all covered damage was repaired at your expense.

You have adjusted this loss based on an inadequate repair cost figure and delayed paying rental income losses long after it was clear the limits of the policy would be owed, thus exacerbating the situation and economic losses at Sandpiper. It is our belief that Texas Insurance Code Article 542.055, et. seq. has been violated, in addition to Chapter 541 and the Texas Deceptive Trade Practices Act. Because of your breach of contract and the inadequacy of your investigation and repair plan, Sandpiper has had to pick up where you and TWIA left off and determine for itself the full nature and amount of the loss above the first $4.3115 million in coverage. It appears that you and your agents directed and controlled the repairs at Sandpiper and thereby ensured that inadequate and incomplete repairs would be done and that the true amount of the covered loss would be concealed or understated and your agents refused to pay for covered items of damage even though recommended to do so by consultants of their own choosing.

As a result of the first phase of its investigation, Sandpiper believes that a minimum of $12 million will be required to repair the covered building damage, and probably substantially more. Based on your own adjuster's depreciation calculations, no more than $1.8 million of that sum could possibly represent depreciation, in part because of the partial repairs that have already taken place.

Thus, we contend that the entire loss covered under your policy from Hurricane Harvey amounts to a minimum of $14.03 million, including loss of income. This figure is subject to increase, as your failure to pay to repair the damage continues or as additional damage is discovered at Sandpiper's expense due to your inadequate investigation and adjustment. Our consultants are continuing to examine the building and compile estimates.

After subtracting the $4.3115 million deductible and maximum allowable depreciation ($1.8 million) and the loss of income claim ($2.03 million), the net actual cash value loss that should already have been paid by you for the building damage is, according to our best information and

Sandpiper notice letter
June 27, 2018
4 | P a g e

belief, a minimum of $5,888,500 million. Subtracting your prior building loss payments of $2,038,718.12 leaves a net ACV claim of a minimum of $3,849,781.88. We demand that your company immediately and unconditionally pay this amount under your insurance policy: $3,849,781.88. You are notified under Section 542A of the Texas Insurance Code that these are the specific amounts alleged to be owed at this time under your policy by you as an insurer for damage to or loss of covered property. Again, this figure is subject to increase and our claim will likely be supplemented as additional damages or repair costs are discovered at Sandpiper's expense due to your inadequate investigation and adjustment, or as additional damages are incurred as a result of your breaches of contract and violations of relevant law. In addition, Sandpiper herewith demands an additional $1.5 million in damages caused by your conduct set out in this letter, including your delay, denials, failures to pay, and supervision of the construction work after Hurricane Harvey.

Once we receive the $3,849,781.88 minimum currently owed under the policy, Sandpiper will complete the repairs thereby represented and expect to be paid a minimum of an additional $1.8 million to represent the difference between the actual cash value loss and full repair costs, as provided by your policy. We hereby reiterate and notify you of our claim for same under the various provisions of your policy to be paid as and when appropriate. If you continue to fail and refuse to pay the policy benefits currently owed, we will treat any condition of your policy (including those requiring repairs be performed or claims to be made within a certain time in order to recover depreciation hold-back) as permanently breached or made impossible to perform by you such that you have waived or are estopped to assert it, and we will then seek immediate payment of the full amount collectible under the policy, including full repair and replacement cost that will inevitably be incurred due to your breaches and your handling of our claims. Your continued failure to pay amounts where your liability is clear is in bad faith and in material breach of the insurance policy contracts. We have claimed and continue to claim the right to full repair/replacement cost coverage under your policies. Moreover, your continued failures and breaches of contract are expected to cause additional damage and loss beyond those already sustained, if you do not rectify them immediately.

In addition, as of this writing, Sandpiper has incurred $16,275 in attorney fees in connection with these claims, calculated by multiplying the number of hours actually worked by its attorney, as of the date of this letter as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services. Be advised that if you continue to fail to honor your payment obligations under the insurance policy, such attorney fees will increase substantially and we will seek all available means to collect Sandpiper's attorney's fees, damages, and benefits owed.

This demand and notice is sent to you under all relevant provisions of the Texas Insurance Code, including Section 542A, as well as under the Texas Deceptive Trade Practices Act. *You are advised that under Texas law, nothing in this notice provides a basis for limiting the evidence of attorney's fees, damage, or loss we may offer at trial*. **We reserve the right to supplement this demand and supplement any proofs of loss as our investigation continues**.

Sandpiper  notice letter
June 27, 2018
**5** | P a g e

   The Sandpiper has been seriously damaged by wind and by ensuing water from wind from Hurricane Harvey far in excess of the deductible of your policy. Your actions (including those of your agents and adjusters) and the continuing denial of this claim continue to compound the economic and physical damage sustained from Hurricane Harvey. A copy of this notice has been provided to Sandpiper, our client, and a copy will be maintained in its files.

                                        Very truly yours

                                        William J. Chriss

Enclosure: Preliminary Proof of Loss

CC:     Sandpiper Condominium
        c/o Col. Michael Smiley, Board President
        and CCMS, managing agent
        200 S. Alister St.
        Suite C
        Port Aransas, TX 78373 (and by email)

A
I
G

O
L
0
1
:
S
e
s
s

1

1
1
/
8
/
2
0
1
8

# PRELIMINARY PROOF OF LOSS

This Proof of Loss submits the best and most recent knowledge and belief of the Insured as a preliminary statement of the minimum amount of covered loss(es) as currently calculated. The Insured reserves all of its rights under all applicable insurance policies or otherwise, including the right to supplement this and any future proof of loss, and does not waive any claims or causes of action.

AMOUNT OF POLICY : $27,911,701 for bldg..      LEXINGTON POLICY NO. 41-LX-024058334-3
BROKER: NSM Ins. Group                                     ISSUED/EXPIRES: 5/1/17-5/1/18

PLACE of LOSS: Sandpiper Condominium Complex, 6745 Seacomber Dr., Corpus Christi, Nueces County, Texas

To    Lexington Insurance Company

By the above indicated policy of insurance you insure Sandpiper Condominium Council of Owners, Inc. against loss at the property described under the above-referenced policy, according to the terms and conditions of said policy and all forms, endorsements, transfers, and assignments appurtenant thereto.

1. TIME AND ORIGIN: A loss occurred on or about the 25th day of August, 2017. The cause and origin of the said loss were: Hurricane Harvey-Windstorm
2. TITLE AND INTEREST: When this policy was acquired and at the time of the loss the interest of your insured in the property described therein was as per the policy and as named insured, the condominium association composed of all unit owners, and no other person or persons had any interest therein or encumbrances thereon except: such unit owners and _____ N/A _____ .
3. TOTAL INSURANCE: The total amount of insurance upon the property for the peril described above was, at the time of the loss, as shown in the above referenced Lexington policy; TWIA Policy No. 51322910; and Lloyd's of London Deductible Buy-back Insurance Policy No. MCD170180.

4. The Business Income/Interruption loss claimed was                           $ 2,030,000 (paid)
5. Minimum preliminary Building RCV Loss and Damage estimated
and currently claimed:                                                                         $ 12,000,000
    (see information previously provided and attached)

    Less Lexington deductible                                                          $  4,311,500
    Less Lexington payments                                                           $  2,038,718.12 (paid)

6. Minimum amount of building loss or damage currently estimated to be covered
    under Lexington policy:                                                               $ 5,649,781.88

    Less minimum RCV withholding as calculated:                             $ 1,800,000
7. Amount of minimum ACV loss as determined thus far:                   $ 3,849,781.88

          This proof may be supplemented as estimating and investigation continue. Other information that has been furnished or may reasonably be requested and furnished may be considered a part of this proof.

AFFIANT President Sandpiper Board of Directors

SUBSCRIBED AND SWORN to this 07th day of ~~May~~ June, 2018 by Michael Smiley known to me, who swore that the above facts are true to the best of his information and belief at this time,

and who stated that he is the authorized representative of Sandpiper Condominium Council of Owners, Inc. and authorized by that entity to make this affidavit on its behalf.

CHARLES W CRAWFORD JR
NOTARY PUBLIC
ID# 12092086
State of Texas
Comm. Exp. 09-05-2020

NOTARY PUBLIC
IN AND FOR THE STATE OF TEXAS



Texas Department
of Insurance
MC 113-2A
333 Guadalupe
Austin, TX 78701



USPS CERTIFIED MAIL

9214 8901 9403 8374 6464 24

LEXINGTON INSURANCE COMPANY
ALEXANDER R BAUGH CHAIRMAN & EX VP
99 HIGH STREET FL 23
BOSTON MA 02110-2378

Return Ref#: Cause No. 2018CCV-61616-3
Custom 1: Amended Petition
Custom 2: E-Case 17441

Postage: $7.2100





CERTIFIED MAIL





neopost
10/31/2018
US POSTAGE $006.79º

ZIP
041M12

USPS CERTIFIED MAIL

LEXINGTON INSURANCE COMPANY
ALEXANDER R BAUGH CHAIRMAN & EX VP
99 HIGH STREET FL 23
BOSTON MA 02110-2378



TEXAS DEPARTMENT OF INSURANCE
legal                    1/5/2018

OFFICIAL BUSINESS
STATE OF TEXAS
PENALTY FOR PRIVATE USE



FOLD HERE

## UPS CVS: View/Print Label

1. **Print the label(s):**  Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the dotted line.**  Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
**Customers without a Daily Pickup**
   - Schedule a same day or future day Pickup to have a UPS driver pickup all of your Internet Shipping packages.
   - Hand the package to any UPS driver in your area.
   - Take your package to The UPS Store[TM], Customer Center or Authorized Shipping Outlet.
   - Drop off your Air Shipments including Worldwide Express SM at one of our 50,000 UPS locations.

**Customers with a Daily Pickup**
   - Your driver will pickup your shipment(s) as usual.

# ANNE LORENTZEN
## DISTRICT CLERK



Certificate of
Return of Service

DISTRICT COURTS / COUNTY COURTS AT LAW

901 LEOPARD STREET, ROOM 313

CORPUS CHRISTI, TEXAS 78401

361 888-0450 Fax 888-0571

Cause Number    2018CCV-61616-3
Style:    Sandpiper Condominium Council of Co-Owners, Inc.
          vs.
          Lexington Insurance Company

Pursuant to the Texas Rules of Civil Procedure, the undersigned certifies this cause.
Service was issued:

To:    Lexington Insurance Company
       99 High Street
       Boston Ma  02110

On (Date Issued)    10/18/2018
and served on:      10/22/2018
or returned unserved

By Certified or Registered Mail. The returned receipt is attached to this form and was filed in
this office on:  10/25/2018

ANNE LORENTZEN, DISTRICT CLERK
NUECES COUNTY, TEXAS
901 LEOPARD STREET, ROOM 313
CORPUS CHRISTI, TEXAS 78401

BY: _Wendy Carvajal_   Deputy
Wendy Carvajal



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lexington Insurance Company
℅ The Texas Commissioner of Insurance, Chief Clerk Office
333 Guadalupe, MC 113-2A
P.O. Box 149104
Austin, Texas 78714-9104

9590 9402 3448 7275 2728 61

2. Article Number (Transfer from service label)

7016 1630 0001 1287 2784

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Clay Manley_ ☐ Agent ☐ Addressee

B. Received by (Printed Name)  Clay Manley   C. Date of Delivery OCT 23 2018

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #

9590 9402 3443 7275 2728 61

United States
Postal Service

Sender: Please print your name, address, and ZIP+4® in this box•

ANNE LORENTZEN, DISTRICT CLERK
DISTRICT COURTS / COUNTY COURTS AT LAW
P.O. BOX 2987
CORPUS CHRISTI, TX 78403