UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| SANDPIPER CONDOMINIUM COUNCIL OF CO-OWNERS, INC. § § § **Plaintiff,** § § **v.** § **LEXINGTON INSURANCE COMPANY** § § **Defendants.** § § § § § § § § § § | CIVIL ACTION NO. 2:18-CV-00414 |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW SANDPIPER CONDOMINIUM COUNCIL OF CO-OWNERS, INC., Plaintiff, and within twenty-one days of the service of Defendant's Answer, files this amended complaint setting forth its claims and responding to said answer as follows.

**CLAIMS FOR RELIEF**

1. Plaintiff is a Texas corporation domiciled in Nueces County, Texas. All events material to this lawsuit occurred in Nueces County, Texas. Plaintiff sues in all capacities it is authorized to appear, including but not limited to as named insured and payee on a policy of insurance and pursuant to its rights and authority to sue in behalf of its owners pursuant to statute, contract, or condominium documents and regime.

1

2. Lexington Insurance Company (hereinafter "Lexington") is an insurance corporation, association, company, or partnership that at all pertinent times herein has done insurance business in this state, or else it is another entity that at all pertinent times herein has done insurance business in this state. The insurance business done by it in Texas, whether through agents or directly, includes, but is not limited to, the following:

    (a) The making and issuing of contracts of insurance with the Plaintiff;

    (b) The taking or receiving of applications for insurance, including the Plaintiff's application for insurance;

    (c) The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and,

    (d) The issuance or delivery of contracts of insurance to residents of this state or to persons authorized to do business in this state, including the Plaintiff.

    (e) Adjusting and investigating, or pretending to adjust and investigate, claims made by policyholders such as the Plaintiff.

The Defendant is an "individual, corporation, association, partnership, or other legal entity engaged in the business of insurance," and as such constitutes a person as that term is defined in Article 21.21 of the Texas Insurance Code, recently re-codified as Section 541, et. seq. of the Texas Insurance Code.

3. Lexington Insurance Company may be served by serving by certified mail, return, receipt requested, its registered, legal, and/or contractually appointed agent for service of process, the Texas Commissioner of Insurance, with duplicate process forwarded by mail by said official to Lexington's designated agent for such purpose:

    Counsel  
    Legal Department  
    Lexington Insurance Company  
    99 High Street  
    Boston, MA 02110

Such service is no longer necessary because Lexington has answered and appeared.

4.      Venue of this complaint is proper in Nueces County, Texas and in the Corpus Christi Division of the Southern District of Texas, in that all or part of Plaintiff's causes of action accrued in such county and division, and the property which is the subject of this suit is located in such county, district and division.  This Honorable Court has jurisdiction of the case due to a diversity of citizenship between the parties, and the Plaintiff here invokes the unlimited monetary jurisdiction of this Court. Plaintiff seeks monetary relief over $1 million.

5.      Several months prior to Hurricane Harvey, Defendant issued an insurance policy or policies covering or purporting to cover Plaintiff's property from certain forms of hurricane damage. The policy in effect at the time of these losses purported to insure the property against losses above a deductible amount of $4.3115 million, up to a limit of over $27 million. Such policy insured the Plaintiff from building damage, damage to structures, personal property damage, and loss of income, and it also included coverage for debris removal, code compliance, increased cost of construction, full replacement cost, and other matters. The code compliance and increased cost of construction provisions promised Defendant would pay for the increased cost of repairing damaged portions of the building and the cost of reconstruction or remodeling of undamaged portions of the building, if such increased cost is a consequence of a requirement to comply with the minimum standards of an ordinance or law. Such coverage also promised to pay, without sublimit, the loss of value of the undamaged portion of the building as a consequence of requirement to comply with an ordinance or law requiring demolition of undamaged portions of the same building. Plaintiff alleges entitlement to both types of benefits as a result of the need to comply with relevant building codes or other law.  Defendant has not paid such benefits.

6.     While the policy or policies were in effect, and on or about August 25, 2017, Hurricane Harvey made landfall on Padre Island causing serious damages to many structures. One of the buildings which suffered serious covered damage from the storm was the Sandpiper condominium complex on Padre Island. Defendant has acknowledged that covered perils from Hurricane Harvey caused "interior water damage to more than 90% of the building interior," and that "damaged porous materials would need to be treated as Category 3 black water and removed and discarded in compliance with S500 standards." Plaintiff is the named insured under the above policies and insures the property in behalf of itself and it members, the owners of the building complex, who are also insureds. This damage included wind damage and damage caused by the resulting entry of water into the building, and/or other covered damage and/or loss, including loss of income, debris removal, increased costs of construction, and other matters. Wind directly damaged the building and storm winds made openings in the structure through which water entered. This and other covered damage occurred within the limits of, and during the term of, the Defendant's policy. Such damage far exceeded $4.3115 million in amount, and any insurance policies insuring that $4.3115 million deductible have long since been exhausted by payment. Plaintiff has the legal and/or contractual responsibility to repair the condominium complex after a natural catastrophe such as Hurricane Harvey.

7.     Meanwhile, Defendant and those liable with it had and have a duty to diligently, promptly, and fairly investigate the loss or losses at Sandpiper under relevant contract, and Texas insurance law and regulation, and to report promptly to Plaintiff. They wrongfully failed to do so, and Plaintiff's claims for hurricane damage benefits under such insurance, which amount to over $9.6 million (including building damage and loss of income) even after accounting for any deductibles, have never been fully paid and/or have been denied. For example, on or about July 24, 2018 and

eleven months after the storm, Defendant rejected in writing Plaintiff's claim made by written demand and proof of loss without first requiring or requesting any additional information with which to evaluate such claim. Before such denial, Defendant had made earlier payments of a total of $4,038,718.12, leaving a denied covered net loss of over $5.5 million. As of the date of Plaintiff's demand and proof of loss, at least $3.8 million of such demand was currently owed and past due under the policy. Defendant, although presented with such claim on or about June 27, 2108, denied such claim in writing more than 30 days ago and continues to refuse to pay it. This constitutes failing to pay such written claim for more than 60 days after receipt of the claim and all information deemed by the Defendant reasonably necessary to make such denial. Defendant did not request additional time to make such decision, nor any additional information it claimed to be necessary prior to making it.

8.  Even when confronted with the inadequacies of its prior investigations and adjustments and the wrongfulness of its claims denials and failures and refusals to pay, Defendant continues to refuse to voluntarily and unconditionally pay any amounts owed, even amounts it has long admitted it is reasonably clear that it is or will be liable for. As such, all amounts covered under said policy are now due and past due to the tune of over $5.5 million.

9.  During the term of said policies, Plaintiff sustained covered losses in the form of hurricane damage, windstorm damage, and water damage, and damages resulting therefrom, and Plaintiff promptly reported same to Defendant and its agents, pursuant to the terms of the insurance policies. Defendant failed to properly and promptly investigate, estimate, and pay Plaintiff's claims for clearly covered property damage and/or loss of income.

10. Despite the fact that all conditions precedent to Plaintiff's recovery have been performed or have occurred, Defendant has failed and refused to pay the Plaintiff a just amount in accordance with

contractual obligations, agreements, and representations. Defendant has, by its conduct, breached its contract of insurance with the Plaintiff. Such breach also proximately caused damages to the Plaintiff, consequential, special, and otherwise. In addition, Plaintiff is entitled to recover attorneys' fees in connection with the contractual causes of action. All of the conditions precedent to bringing this suit under the policy and to Defendant's liability to the Plaintiff under the policy for the claims alleged have been performed or have occurred.  All notices and proofs of loss were timely and properly given in such manner as to fully comply with the terms and conditions of the relevant insurance policies and applicable law.  In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, or requirements, the Defendant waived them, is estopped from asserting them, and/or the Plaintiff substantially complied with them, or is excused from complying further.  Plaintiff makes the same allegations of waiver, substantial compliance, excuse, or estoppel as to every defense or exclusion pleaded by any adverse party. For example, and by way of illustration only, the refusal to pay Plaintiff's claims under the policy amounts to a conclusive waiver or excuse of the performance by Plaintiff of any and all conditions, procedures, or covenants in the policy, and a conclusive estoppel for Defendant to rely upon any of them in any way. In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, procedures, or requirements, or as to any claim of wrongful or inadequate conduct or communication by Plaintiff, the Defendant is prohibited from asserting them or is estopped to rely on them by relevant law. Moreover, as to the policy exclusions or other matters of avoidance pleaded by Defendant, such as any replacement cost limitation or condition or time limit in the policy or necessity of making repairs before collecting benefits, Plaintiff is excused from compliance and would show that Defendant has waived or is estopped to assert any limitations contained in such provisions because of Defendant's conduct in refusing to pay Plaintiff's claim, substantially breaching the contract, and/or making such condition impossible or unreasonably

difficult to perform such that Plaintiff is excused from compliance. Plaintiff alleges the contract has been breached and sues for all sums due at any time for this occurrence, including full replacement cost, code upgrades, and future liability and damages from such breach that are probable or reasonably clear.

11.     Within days after the storm, Defendant, through their agents, received a "notice of claim" as that term is defined by Section 542.051 et. seq. of the Texas Insurance Code. Plaintiff alleges that Defendant and their claims agents failed to follow the requirements and time limits of Section 542.051, et. seq. also known as the Prompt Payment of Claims Statute with respect to the claims that are the subject of this suit, and that therefore Defendant owes statutory damages or percentage penalties and attorneys' fees under such code provisions. As one example, Lexington received Plaintiff's written proof of loss, did not request any additional information with which to make a decision, and denied the claim thereby made, refusing to pay any amount of such claim for more than 60 days. Lexington's refusal for over 60 days to pay the entire claim upon presentment by demand and proof of loss constitutes failing to promptly pay for 60 days under Section 542.060 of the same statute after having all information it deemed necessary to make a decision on such claim.

12.     Defendant and their agents visited and viewed Plaintiff's insured property in Nueces County, Texas, in connection with Plaintiff's claims of property damage and income loss. Defendant knew or should have known that Plaintiff had sustained significant damage to the property in excess of all relevant deductibles and requiring significant repairs as a result of a loss and peril covered by the insurance policies. Defendant knew and continues to know that a substantial covered loss was and is owed.  Nonetheless, Defendant and their agents denied, delayed, or failed to pay or properly investigate some or all of Plaintiff's covered claims with no reasonable basis.  Defendant failed or refused to pay any amount long after knowing substantial

sums were owed even based upon their own faulty investigation and calculations, and even after acknowledging this in writing. Defendant has failed to act promptly or to conduct a good faith reasonable investigation. This is bad faith claim delay and/or denial and a violation of Articles 21.21 and 21.55 of the Texas Insurance Code, recently re-codified as Sections 541 and 542, et. seq. During the term of said Defendants' policy, Plaintiff sustained covered losses in the form of hurricane damage, windstorm damage, and water damage, and damages resulting therefrom, and Plaintiff promptly reported same to Defendants and their respective agents pursuant to the terms of the insurance policy. Defendants failed to properly and promptly investigate, estimate, and pay Plaintiff's claims for clearly covered property damage. Plaintiff would show that Defendants breached their legal and contractual duties and as a result of this, they proximately caused damages to the Plaintiff, including consequential damages and special damages in the form of additional income losses and/or the necessity to do additional repairs and/or additional expense and/or reduction in value to the property, some of which may be covered under the policy, in addition to representing consequential or special damages.

13.     Lexington's obligation to promptly investigate, estimate, and pay for the damage above $4.3115 million was clear as soon as it was clear that the damage to the building was severe enough to exceed the deductible, which was, and should have been, obvious to any fair-minded and experienced adjuster or insurance professional soon after the storm. However, it took Lexington and it adjusters and agents over seven months to come up with an evaluation and estimate of the damage. That estimate, inadequate though it was, confirmed that Lexington owed Sandpiper millions of dollars for building damage, as well as the limits of the policy for loss of income. Although Sandpiper has executed all the proofs of loss requested by Lexington in order to receive advance payments of its ultimate liability, neither Lexington nor its agents requested from Sandpiper

any proof of loss on the total building damage. Nonetheless, Sandpiper submitted documentation of at least $1.2 million in additional unpaid building loss as per Lexington's adjuster's own calculation/spreadsheet, and also evidence of extensive damage to window and door systems throughout the building that Plaintiff's continuing investigation estimates will cost a minimum of an additional $3 million to repair, if not more. In addition, there is other covered damage, including building elements that should have been torn out and removed were not, even though this process was performed under the direction of Lexington and its adjusters and agents. Defendant owes Plaintiff in excess of $5.5 million under the relevant policy.

14. Plaintiff contends that Lexington has failed to meet the deadlines established in the Texas Insurance Code without good cause, has rejected and failed to pay a claim or a portion thereof without conducting a reasonable investigation with respect to the claim, and has denied coverage for, or refused to pay, a claim when liability has become reasonably clear. Plaintiff also alleges that Lexington's conduct has been unconscionable. It has been a year since Hurricane Harvey hit, and Lexington's policies and Texas law required it to promptly investigate and immediately pay *the full amount* of covered damage without need for supplementation and without the policyholder needing to spend so much of its own time and money doing Lexington's job of investigating and quantifying the amount it owes. Lexington failed to meet these requirements and breached the insurance policy contract. Such breaches proximately caused damages to Plaintiff, including expenses, lost income, lost value, policy benefits owed or recoverable as a result of the storm, and consequential damages that include consequential damage to the building and other consequential and special damages.

15. Also, Lexington's job was not to direct repairs and to then pay contractors and consultants of its choosing or reimburse its customer for expenses it was forced by Lexington to incur. Rather,

Lexington should have promptly estimated and paid the full amount of the loss before its customer was forced to pay out any substantial sums for permanent repairs. Lexington also should have investigated, understood, and determined the full scope of the damage and necessary repairs and paid for them, so the customer could then select and retain a contactor of its choosing. Instead, Lexington and its adjusters and agents directed an open-ended repair process while knowingly or negligently refusing to do all that was needed to repair the building, ignoring its own consultant's advice, and placing Sandpiper in jeopardy of not being fully compensated for the job underway, even though that job had already begun based on Lexington's misrepresentation that it would see to it that all covered damage was repaired at Lexington's ultimate expense.  Lexington and its adjusters adjusted this loss based on an inadequate repair cost figure and they delayed paying rental income losses long after it was clear that such amounts were due and/or that the limits of the policy would be owed, thus exacerbating the situation and general and special damages and economic losses at Sandpiper and causing income loss in excess of the policy limits.

16.     Plaintiff claims that Texas Insurance Code Article 542.055, et. seq. has been violated, in addition to Chapter 541 and the Texas Deceptive Trade Practices Act. Because of Lexington's breach of contract and the delay and inadequacy of its investigation and repair plan, Sandpiper has had to pick up where Lexington left off and determine for itself the full nature and amount of the loss above the $4.3115 deductible. This has now resulted in damage to Sandpiper in the amount of the costs of such investigation into the full scope of damage and the correct scope and method of repairs. It appears that Lexington and its agents directed and controlled the repairs at Sandpiper and thereby ensured that inadequate and incomplete repairs would be done and that the true amount of the covered loss would be concealed or understated and Lexington and/or its agents refused to pay for covered items of damage even though recommended to do so by consultants of their own choosing. Lexington

undertook a duty to supervise and direct repairs at the Sandpiper and negligently failed to properly discharge that duty, proximately causing damage to Plaintiff.

17.     Defendant's denial, delay, refusal and/or failure to pay constitute material breaches of contract and were and are in bad faith and constitute a breach of the covenant of good faith and fair dealing, which breaches were proximate and producing causes of damages to the Plaintiff more specifically set forth herein. There was no reasonable basis for Defendant's actions, and the Defendant knew or should have known that there was no such reasonable basis to deny, delay, and fail to pay the entirety of such claims. Furthermore, the conduct of Defendant amounts to one or more of the following:

   a. Violations of Chapter 541, Texas Insurance Code, including not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear in violation of Art. 541.060 of the Texas Insurance Code, Section (a)(2);

   b. Refusing to pay claims without conducting a reasonable investigation based upon all available information in violation of Art. 541.060 of the Texas Insurance Code, Section (a)(7);

   c. undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, unless the payment is a compromise settlement of a doubtful or disputed claim in violation of Art. 541.060 of the Texas Insurance Code, Section (a)(6);

   d. failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim in violation of Art. 541.060 of the Texas Insurance Code, Section (a)(3);

11

e. Failing to handle, investigate, or process the Plaintiffs' claims in good faith; in violation of common law as expressly stated by the Texas Supreme Court in *Vail v. Texas Farm Bureau*, 754 S.W.2d 129 at 135 (Tex. 1988);

f. Violations of the Texas Deceptive Trade Practices Act, including committing a course of conduct that is unconscionable;

g. Refusing to pay a claim without a reasonable basis in violation of common law;

h. Delaying payment of a claim without a reasonable basis in violation of Chapter 541 and common law;

i. Denying and/or delaying payment of a claim without determining whether there is any reasonable basis to do so in violation Chapter 541 and common law;

j. Failing within a reasonable time to affirm or deny coverage and failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim in violation of Chapter 541 of the Texas Insurance Code;

k. Violating Section 542.003, Tex. Ins. Code by:

  i. knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue;

  ii. failing to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the insurer's policy;

  iii. not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear;

      iv.    compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder;

      v.    failing to maintain the information required by Section 542.005; or

      vi.    committing another act the commissioner determines by rule constitutes an unfair claim settlement practice.

   l.  Violations of The Tex Prompt Payment of Claims Act, 542.051, et. seq., Tex. Ins. Code;

  m.  Breach of contract; or

  n.  Other violations of law.

18.    As a result of all of such conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court. In addition, the conduct of Defendant was committed knowingly, and under circumstances constituting willful and wanton and reckless disregard of the rights of the Plaintiff and others similarly situated. It was negligent and tortious and grossly negligent and included misrepresentation. The conduct of Defendant proximately caused injury and consequential damages to the Plaintiff.

19.    In order to prosecute this action against the adverse parties, Plaintiff has been required to retain the services of the undersigned attorneys and will incur the fees and expenses of said attorneys in regard to this action. Accordingly, pursuant to Chapters 37 and 38 of the Texas Civil Practice & Remedies Code, and under several other relevant statutes applicable to the conduct and causes of action alleged herein, including Chapters 541 and 542 of the Texas Insurance Code, Plaintiff is entitled to recover its reasonable and necessary attorneys' fees incurred, including through trial and any appeal. The claim has been presented and pre-suit notice has been timely and

properly given under the policy and all relevant statutes, including Texas Insurance Code Section 542A. Such notice was attached to Plaintiff's prior petition as Exhibit A. Lexington has opted in response to such notice to: a) decline to inspect, photograph, or evaluate the property that is the subject of the insurance claim although repeatedly invited to do so, and: b) accept responsibility and liability for all its adjusters and agents under Section 542A, such that Lexington is liable as a matter of law for their acts in connection with the underlying insurance claims, including but not limited to their negligence and gross negligence described above.

20.     All the above alleged breaches of duty proximately caused damages to the Plaintiff, consequential, special, and otherwise, in an amount in excess of the minimum jurisdictional limits of this Court. In addition, Plaintiff is entitled to recover attorneys' fees in connection with the bringing of this action for breach of contract or under relevant statute. Plaintiff asserts all statutory claims, demands, and causes of action assertible under Texas law from the pleaded scenario and facts. All notices required by law or contract have been timely and properly given or else are excused, waived, moot, or made unnecessary by the circumstances and/or Defendants' conduct, including by way of waiver or estoppel.

## RESPONSIVE PLEADINGS

1.      Paragraphs 1, 2, and 3 of Defendant's Answer require no response.

2.      Plaintiff disagrees with, and therefore denies, the allegations and denials contained in paragraphs 4 through 19 of Defendant's Answer.

3.      Plaintiff denies the allegations of Paragraph 1 of Defendant's affirmative defenses.

4.      Plaintiff denies the allegations of Paragraph 2 of Defendant's affirmative defenses.

5.      Plaintiff denies the allegations of Paragraph 3 of Defendant's affirmative defenses.

6. Plaintiff denies the allegations of Paragraph 4 of Defendant's affirmative defenses and, for example, directs the court to such notice attached to its prior petition in this cause.

7. Plaintiff denies the allegations of Paragraph 5 of Defendant's affirmative defenses, denies the applicability of such exclusions to the damages sought, and pleads in the alternative the doctrine of ambiguity requiring the policy terms to be construed *contra proferendum*. Plaintiff also pleads the exceptions to such exclusions that reinstate coverage for various losses or elements of loss, including that such exclusions do not apply to windstorm loss or damage resulting from such excluded perils. Therefore, such exclusion does not apply.

8. Plaintiff denies the allegations of Paragraph 6 of Defendant's affirmative defenses, denies the applicability of such exclusions to the damages sought, and pleads in the alternative the doctrine of ambiguity requiring the policy terms to be construed *contra proferendum*. Plaintiff also pleads the exceptions to such exclusions that reinstate coverage for various losses or elements of loss, including that such exclusions do not apply to windstorm loss or other damage from a covered cause resulting from such excluded perils. Therefore, such exclusion does not apply.

9. Plaintiff denies the allegations of Paragraph 7 of Defendant's affirmative defenses and pleads that such limitations have been waived by Defendant's delay, denial, and other conduct, and/or that Defendant is therefore estopped to assert such limitations.

10. Plaintiff denies the allegations of Paragraph 8 of Defendant's affirmative defenses and pleads that such limitations have been waived by Defendant's delay, denial, and other conduct, and/or that Defendant is therefore estopped to assert such limitations. Plaintiff further reincorporates here its pleading above that as to any such terms, conditions, notices, or requirements, the Defendant waived them, is estopped from asserting them, and/or the Plaintiff substantially complied with them, or Plaintiff is excused from complying further.  For example, and by way of illustration only, the

refusal to pay Plaintiff's claims under the policy amounts to a conclusive waiver or excuse of the performance by Plaintiff of any and all conditions, procedures, or covenants in the policy, and a conclusive estoppel for Defendant to rely upon any of them in any way. In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, procedures, or requirements, or as to any claim of wrongful or inadequate conduct by Plaintiff, the Defendant is prohibited from asserting them or is estopped to rely on them by relevant law. Moreover, as to the policy exclusions, conditions, or other matters of avoidance pleaded by Defendant, such as any replacement cost limitation or condition or time limit in the policy or necessity of making repairs before collecting benefits, Plaintiff is excused from compliance and would show that Defendant has waived or is estopped to assert any limitations contained in such provisions because of Defendant's conduct in refusing to pay Plaintiff's claim, substantially breaching the contract and/or making such condition impossible or unreasonably difficult to perform such that Plaintiff is excused from compliance. Plaintiff alleges the contract has been breached and sues for all sums due at any time for this occurrence, including full replacement cost, code upgrades, and future liability and damages from such breach that are probable or reasonably clear.

11. Plaintiff denies the allegations of Paragraph 9 of Defendant's affirmative defenses and pleads the provisions of Rule 9 (c).

12. Plaintiff denies the allegations of Paragraph 10 of Defendant's affirmative defenses.

13. Plaintiff denies the allegations of Paragraph 11 of Defendant's affirmative defenses would show that under relevant law, no Plaintiff can be charged with failure to mitigate damage except to the extent such mitigation can be accomplished with trifling expense and reasonable exertions. In addition, a mere refusal to accept a settlement offer is not mitigation of damages under Texas law. *Gunn Infinity v. O'Byrne*, 996 S.W.2d. 854 (Tex. 1999) at 857, quoting *Great*

16

*Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995), quoting *Walker v. Salt Flat Water Co.*, 96 S.W.2d 231, 232 (Tex. 1936). Moreover, in connection with any mitigation pleading, the Defendant must offer evidence showing not just the plaintiff's lack of care but also the amount by which the damages were increased by such failure to mitigate. *Cocke v. White*, 697 S.W.2d 739, 744 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.); *R.A. Corbett Transport, Inc. v. Oden*, 678 S.W.2d 172, 176 (Tex. App.—Tyler 1984, no writ); *Copenhaver v. Berryman*, 602 S.W.2d 540, 544 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.).

14. Paragraph 12 of Defendant's Answer requires no response.

15. In answer to all affirmative defenses raised by Defendant, Plaintiff pleads the provisions of Rule 8(c) and Tex. Ins. Code § 554.002, as well as the provisions of Article 705 and Section 862.054 of the Texas Insurance Code, Section 16.071, Tex. Civ. Prac. & Rem Code, and that as to any such defenses, conditions, exclusions, excuses, or matters of avoidance, the Defendant suffered no prejudice, they were not material, the Defendant waived them, is estopped from asserting them, and/or the Plaintiff substantially complied with them or is excused from performing them. For example, and by way of illustration only, the refusal to pay Plaintiff's claims under the policy amounts to a conclusive waiver of the performance by Plaintiff of any and all conditions, procedures, or covenants in the policy, and a conclusive estoppel for Defendant to rely upon any of them in any way. Moreover, as to the policy exclusions and as to any covenants or conditions, such as any replacement cost limitation or condition in the policy or time limit for recovery of any benefit, such as depreciation holdback or code upgrade coverage, Plaintiff would show that Defendant has waived or is estopped to assert any limitations contained in such provisions because of Defendants' conduct in refusing to pay Plaintiff's claim, substantially breaching the contract and/or making such condition impossible or unreasonably difficult to perform such that Plaintiff is excused from compliance. Plaintiff alleges

17

the contract has been breached and sues for all sums due at any time for this occurrence, including full replacement cost and future liability and damages from such breach that are probable or reasonably clear.

## JURY DEMAND AND PRAYER

Pursuant to relevant law and the Rules of Civil Procedure, Plaintiff demands a jury trial and has tendered to the Clerk of the state court from whence this case was removed the statutory jury fee.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, SANDPIPER CONDOMINIUM COUNCIL OF CO-OWNERS, INC. prays that on final trial, Plaintiff have judgment or other court action against Defendant in the following respects:

- A. For recovery of the claim and benefits owed and unpaid by Defendant under the insurance policy or policies against those alleged liable under it or in connection with it, together with attorney's fees and other damages appurtenant to and part of such causes of action;

- B. For damages against Defendant for breach of an insurance policy contract or contracts in the amount of policy benefits withheld, together with attorney's fees and other damages, direct, special, or consequential, appurtenant to and part of such causes of action;

- C. For statutory and tort damages, actual, consequential, and special, caused by the conduct alleged herein;

- D. For additional or punitive damages as allowed by law;

- E. For statutory damages and attorney fees for violation of the Texas Prompt Payment of Claims Act;

- F. For attorney fees and costs of suit as allowed by law;

G.     For prejudgment and post-judgment interest as allowed by law.

In the alternative, Plaintiff prays, moves and respectfully requests this Honorable Court that upon final hearing and trial hereof, this Honorable Court grant to the Plaintiff such relief that it may be entitled to because of the facts and circumstances set forth above or in any amended pleading, including damages or other relief either general or special, including judgment against all adverse parties for costs of suit, for statutory penalties and prejudgment and post-judgment interest, as and if allowed by law.

Respectfully submitted,

**THE SNAPKA LAW FIRM**
606 N. Carancahua, Suite 1511
P.O. Box 23017
Corpus Christi, Texas 78403
Telephone: (361) 888-7676
Facsimile: (361) 884-8545

*/s/ William J. Chriss*
**William J. Chriss**
State Bar No. 04222100
Email: wjchrisspc@gmail.com
**Kathryn Snapka**
State Bar No. 18781200
Email: ksnapka@snapkalaw.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that, on December 6, 2018, a true and correct copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure as follows:

Raymond L. Gregory II
EGGLESTON & BRISCOE, LLP
4800 Three Allen Center
333 Clay Street
Houston, Texas 77002
rlg2@egglestonbriscoe.com
**ATTORNEYS FOR DEFENDANT LEXINGTON INSURANCE COMPANY**

/s/ *William J. Chriss*
**William J. Chriss**
**Attorney-In-Charge**