UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


SANDPIPER CONDOMINIUM COUNCIL )        CASE NO: 2:18-CV-00414
OF CO-OWNERS, INC.,            )
                               )               CIVIL
                 Plaintiff,    )
                               )        Corpus Christi, Texas
       vs.                     )
                               )        Friday, February 8, 2019
LEXINGTON INSURANCE COMPANY,   )
                               )        (8:30 a.m. to 9:02 a.m.)
                 Defendant.    )


INITIAL PRETRIAL CONFERENCE

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

For Plaintiff:          WILLIAM J. CHRISS, ESQ.
                        The Snapka Law Firm
                        606 N. Carancahua St., Suite 1511
                        Corpus Christi, TX 78401

For Defendant:          JAMES M. DENNIS, ESQ.
                        Mound Cotton, et al.
                        One New York Plaza
                        New York, NY 10004

Court Recorder:         Genay Rogan

Clerk:                  Brandy Cortez

Court Security Officer: Adrian Perez

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1      **Corpus Christi, Texas; Friday, February 8, 2019; 8:30 a.m.**

2                          **(Call to Order)**

3          **THE COURT:**  The Court calls Cause Number 2:18-CV-414,

4   *Sandpiper Condominium Council verses Lexington Insurance*

5   *Company*.

6          The Plaintiff announce.  Good morning.

7          **MR. CHRISS:**  Good morning, Your Honor.  I'm William

8   Chriss for the Plaintiff.

9          **MR. DENNIS:**  Good morning, Your Honor.  James Dennis

10  for the Defendant Lexington.

11         **THE COURT:**  Okay.  Now, I thought there was someone

12  stuck in New York.  Does someone --

13         **MR. DENNIS:**  That was me, Your Honor.

14         **THE COURT:**  You -- okay, you made it.

15         **MR. DENNIS:**  I did.  I sent a communication as a

16  precaution, because it looked for a while that we were not

17  going to make it.

18         **THE COURT:**  Okay.

19         **MR. DENNIS:**  Thank you.

20         **THE COURT:**  Uh-huh.

21         So we're here for an initial pretrial conference this

22  morning.  And I know there's a pending motion, the Defendant's

23  motion to strike the Plaintiff's responsive pleading in the

24  second amended complaint.

25         So let's proceed on that first.  I've reviewed the

 1   briefing.

 2            Anything else on that, Mr. Dennis?

 3        **MR. DENNIS:**  Good morning, Your Honor.

 4        **THE COURT:**  Good morning.

 5        **MR. DENNIS:**  The motion is with regard to that

 6   portion of the second amended complaint entitled Responsive

 7   Pleadings.  As we've set forth in our motion papers under Rule

 8   7, there's no provision for a reply to an answer.

 9            The structure of the Federal Rules is that there are

10   complaints, there are cross claims and there are answers to

11   those documents absent leave of Court.  In this case, the

12   responsive pleadings were filed without leave of Court.

13            And even putting aside for a moment the leave of

14   Court issue, the responsive pleadings are essentially not

15   useful and are actually counterproductive.  Because

16   essentially, they are just further allegations of what was set

17   forth in Plaintiff's complaint initially.

18            The -- and now, Lexington, when we file our answer,

19   will then have to answer these allegations which presumably

20   will then spur further replies.  So --

21        **THE COURT:**  Let me hear from the Plaintiff as to why

22   that should be included because it kind of just sounded like

23   summary judgment-type arguments to me with case citations, and

24   we don't usually see that in a complaint.  So let me let

25   Mr. Chriss tell me why it should remain.

4

1          **MR. CHRISS:**  Your Honor, in insurance coverage cases,

2   the structure of insurance policies and the way that Texas

3   insurance law works is that the Plaintiff has the initial

4   burden of proof to establish that a loss occurred during the

5   term of the policy.

6          And then the Defendant has the burden of pleading a

7   proof in connection with any exclusions under the policy or any

8   other affirmative defenses.  It's kind of the standard deal.

9          Under Texas law, which we use in this diversity

10  case -- under Texas law, the Plaintiff then has an opportunity

11  to plead exceptions to those exclusions or matters of avoidance

12  with respect to those exclusions.

13         And the Plaintiff also has the right under Texas law

14  to plead such things as waiver estoppel excuse, with respect to

15  conditions that the Defendant has raised, that they want to try

16  to use to defeat coverage.

17         So that's the reason for responding to the answer.

18  I'll just tell the Court, I mean, I'm going to want to replead

19  anyway at some point in the proceedings as the matter goes

20  forward.

21         So whether the Court wants to strike these four pages

22  of my complaint or not, I would like the opportunity to clean

23  up my pleadings and file an amended complaint.

24         **THE COURT:**  Yeah.  And I kind of agree with that.  I

25  was looking at this a little bit different because it is an

1    insurance contract case.  But then when I actually read through

2    the complaint, I thought it was probably a little too much with

3    the case citations, the arguments, and all.

4            So I'm inclined to grant the motion to strike,

5    understand the request.  And this was a removed -- a case

6    removed from the State Court --

7            **MR. CHRISS:**  Correct.

8            **THE COURT:**  -- right?  And so there was some cleanup

9    of the petition --

10           **MR. CHRISS:**  Correct.

11           **THE COURT:**  -- already?

12           **MR. CHRISS:**  Correct.

13           **THE COURT:**  Is there any objection to allowing the

14   Plaintiff to replead here?  Or I'm not sure where we are

15   timewise, so --

16           **MR. DENNIS:**  No objection --

17           **THE COURT:**  Okay.

18           **MR. DENNIS:**  -- Your Honor.  I would just ask that we

19   set a date for that to happen, so we can --

20           **THE COURT:**  Okay.

21           Mr. Chriss, what sort of timeframe are you looking

22   at, or do you need to --

23           **MR. CHRISS:**  I'd say 30 days to --

24           **THE COURT:**  Okay.

25           **MR. CHRISS:**  -- or even less just to file -- the

1    problem is I have a lot of other things going on, including

2    responding to discovery in this case.  So I'd say 30 days.

3           **THE COURT:**  Okay.  So then I'm going to grant the

4    motion to strike.  And then you'll file a new pleading within

5    30 days.  And then the Defense will respond to that.

6           Because then what would happen is I'd give you an

7    opportunity to do the responsive pleadings, and they'd want to

8    do it, and we just --

9           **MR. CHRISS:**  I understand.

10          **THE COURT:**  -- would continue going back and forth.

11          **MR. CHRISS:**  I totally understand, Judge.

12          **THE COURT:**  So we'll do that.  That'll take care of

13   the pending motion.

14          Now, in reading through the joint discovery case

15   management plan that was submitted, there seemed to be a couple

16   of issues that seems that you would be able to address.

17   There's a question about additional damages, were they

18   specific, what are they.

19          I would we'd be -- are we still trying to figure that

20   out from the Plaintiff's side?  Or do you-all know when you-all

21   provided that, is what it sounded to me.  But then the Defense

22   is saying, no, they haven't been identified or --

23          **MR. CHRISS:**  Judge, I just yesterday served

24   interrogatory answers.  Two things.  First of all, we made a

25   specific multi-page pre-suit demand for a specific amount of

1   money in this case.

2          And it's attached to our amended complaint.  I mean,

3   the Court can see that.  And the Defendant chose not to pay any

4   money in response to that.

5          **THE COURT:**  So there was initially a payment made,

6   then here's some additional damages --

7          **MR. CHRISS:**  Correct.

8          **THE COURT:**  -- and the Plaintiffs are saying, we've

9   given you notice of these additional damages.  I'm not sure why

10  I was picking up; I thought the Defendant was saying, well, we

11  kind of don't know what those are yet; is that right,

12  Mr. Dennis?

13         **MR. DENNIS:**  It is, Your Honor.  What Mr. Chriss did

14  is send in a pre-suit letter.  And it was very long, a lot of

15  statements about general numbers.

16         **THE COURT:**  Well, let me just do this -- and I'll let

17  him finish, and you can respond -- but -- so, yes, the Defense

18  is saying, we don't know what your additional damages you're

19  claiming, yes?

20         **MR. DENNIS:**  Yes, Your Honor.

21         **THE COURT:**  Okay.

22         Go ahead, Mr. Chriss.

23         **MR. CHRISS:**  Okay; so what we did, Your Honor, after

24  the lawsuit was filed and removed to federal court, we made our

25  initial disclosures, which by my count involved over 2,000

1    documents or computer files that we produced.

2           And those documents included photographs, engineering

3    reports, financial statements to verify the loss of income

4    claim, which the Defendant's already paid its policy limits on,

5    as well as summaries, Excel summaries of over $10 million in

6    damages that have already been incurred and either paid or

7    contracted for in terms of repair costs.

8           So they have Excel spreadsheets backed up by invoices

9    showing that $10 million has been spent repairing the building

10   after Hurricane Harvey.  And --

11          **THE COURT:**  In addition to the initial payouts?

12          **MR. CHRISS:**  No, no, no --

13          **THE COURT:**  No, no, no.

14          **MR. CHRISS:**  This is --

15          **THE COURT:**  -- Together?

16          **MR. CHRISS:**  -- the total claim -- the total amount

17   of the claim in terms of amounts paid and incurred so far is

18   approximately $10 million.  And the exact figure has been given

19   to Counsel.

20          We responded to his interrogatories yesterday and

21   provided him with extensive information showing that -- showing

22   the payments that have been made, the contracts that have been

23   entered into, the bids that have been received.

24          And so we've demonstrated to them through literally

25   thousands of documents, invoices, contracts, Excel

1    spreadsheets, the amounts that have been paid, which are in

2    excess of $10 million to fix the building so far.

3              And we've also provided them with bids for the

4    remaining work that needs to be done that total 5 to $6 million

5    total -- somewhere between 5 and $7 million because we have

6    different bids and we've given to them.

7              **THE COURT:**  Okay.

8              **MR. CHRISS:**  So the total amount of the damage to the

9    building actually is substantially in excess of our original

10   estimate that was in our demand letter.

11             **THE COURT:**  Okay.

12             **MR. CHRISS:**  And so the total amount of damage to the

13   building, by our calculation, which we have given them and we

14   have answered their interrogatory to tell them how we've

15   calculated our damages in this case.  The total amount of

16   property damage to the building is in the range of $16 million.

17             And the deductible on their policy is 4.1  or $4.2

18   million.  And they've paid an additional $2 million.  So if

19   they -- so if you add a deductible to the amount that they've

20   paid, they're about $10 million short.

21             **THE COURT:**  Okay.

22             **MR. CHRISS:**  And my client is now borrowing millions

23   of dollars to finish fixing the building because they won't

24   pay.

25             **THE COURT:**  All right.  So let me let Mr. Dennis tell

1   me why he -- the Defense is taking the position they don't know

2   exactly what the damages are.

3          And I understand maybe some of that has just been

4   presented through interrogatories or already -- I'm not sure

5   where we are.  But it looks like there was some production

6   yesterday.

7          **MR. DENNIS:**  Yes, Your Honor.

8          **THE COURT:**  Okay.

9          **MR. DENNIS:**  Here's where we are.  What we're

10  entitled to, what we asked for in our interrogatories, what

11  we're entitled to in the Rule 26 statement is a clear statement

12  of what their damages are.

13         If you tell us that you need $5 million for windows,

14  just give me a list.  Windows are $5 million, doors are a

15  million dollars, something else is $2 million.  Just give me a

16  list, please.

17         **THE COURT:**  And you don't have a list?

18         **MR. DENNIS:**  No.  We're getting --

19         **THE COURT:**  Not even with the interrogatories?

20         **MR. DENNIS:**  No.

21         **THE COURT:**  Just a clean, clear, here's the cost,

22  here's a cost, here's a cost?

23         **MR. DENNIS:**  No.

24         **THE COURT:**  And that's --

25         **MR. DENNIS:**  And that --

1      **THE COURT:**  -- what you want?

2      **MR. DENNIS:**  Yes, Your Honor.

3      **THE COURT:**  Is there a problem providing that?

4      **MR. CHRISS:**  I've given him that, Judge.

5      **THE COURT:**  Okay.

6      **MR. DENNIS:**  But we haven't --

7      **MR. CHRISS:**  I've --

8      **THE COURT:**  He --

9      **MR. CHRISS:**  -- given him a two-page answer to his

10     interrogatory, what is your damage calculation, telling him

11     what I just got through telling the Court, and providing --

12     **THE COURT:**  Okay; well --

13     **MR. CHRISS:**  -- him with the documents.

14     **THE COURT:**  -- let me see it.  Do you-all have that

15     with you by chance --

16     **MR. DENNIS:**  I have it --

17     **THE COURT:**  -- the two pages?

18     **MR. DENNIS:**  -- only electronically --

19     **THE COURT:**  Okay.

20     **MR. DENNIS:**  -- Your Honor.  But basically, it's

21     something of a -- just another statement with numbers in it

22     that are conflicting with each other.

23          I don't want a statement; I respect Counsel.  But I

24     don't need another lengthy dissertation.  All I need is a list,

25     windows are x, doors are y, something else is z.  It can be one

1    page --

2           THE COURT:  Okay; well, what does the two pages say

3    that's the problem?

4           MR. DENNIS:  It goes on and on about bids and

5    damages, and we've got this, or we've got that, and what's been

6    produced for --

7           THE COURT:  So you don't care for any backup; you

8    just want to say --

9           MR. DENNIS:  I can --

10          THE COURT:  -- damage to the doors, $10,000, to the

11   whatever it is -- I'm not sure what the condos are, $1 million,

12   that's all --

13          MR. DENNIS:  Yes, Your Honor.

14          THE COURT:  -- no specifics?

15          MR. DENNIS:  I can dig through the backup.  All I

16   need is a list --

17          THE COURT:  Usually, I get the other objection,

18   they're not telling me what these things are, they're just too

19   general, the damages are too general.  You want a simple list?

20          MR. DENNIS:  Yes, I do, Your Honor.

21          THE COURT:  Do we have that, or is it a problem to

22   create that, or you're saying --

23          MR. CHRISS:  I'll --

24          THE COURT:  -- you already did it?

25          MR. CHRISS:  I'll have to create it, Judge.  And what

1    the rules say -- he's the insurance company.  I'm not -- he's

2    the one who's supposed to be adjusting the claim and figuring

3    out how much they owe.

4            What he's doing is wanting me to do his work --

5            **THE COURT:**  Okay.

6            **MR. CHRISS:**  -- for him.

7            **THE COURT:**  I mean, I thought we could clear some of

8    this up, but apparently not.  I thought it would be easy to,

9    okay, the Plaintiff is saying we've let them know what the

10   damages are, Defense is saying, no, we don't know, and I

11   thought you-all should know by now, but --

12           **MR. CHRISS:**  I wish I had brought my interrogatory

13   answers, Your Honor; but I just didn't think we'd --

14           **THE COURT:**  Have you had a chance to review those,

15   Mr. Dennis, being that you were --

16           **MR. DENNIS:**  I looked at them --

17           **THE COURT:**  -- in transit here and --

18           **MR. DENNIS:**  -- I looked at them very quickly

19   yesterday afternoon on my phone when they came in.

20           **THE COURT:**  What about on the disclosures; were those

21   provided already?

22           **MR. CHRISS:**  The backup documentation was provided in

23   the disclosures and what I'm --

24           **THE COURT:**  But not setting out the damages?

25           **MR. CHRISS:**  What the interrogatory answer says is,

14

```
1    we refer you to the Excel spreadsheets we've already provided

2    you showing you, backed up by specific invoices, the amounts

3    spent that total $10 million.  I've got --

4              THE COURT:  Okay.

5              MR. CHRISS:  -- Excel --

6              THE COURT:  And beyond that, the Plaintiff is saying

7    the two pages spell it out, as to what the claim of damages is,

8    correct?  Correct, Mr. Chriss?

9              MR. CHRISS:  Yes, that's correct, Your Honor.  Here's

10   our estimate and this is what we're claiming.

11             THE COURT:  Okay; I guess I need to see the two

12   pages.  Can you forward that to Brandy?  And she'll print it,

13   and I'll look at it.

14             MR. DENNIS:  Can I have your email?

15             THE CLERK:  B-R-A-N-D-Y --

16             MR. DENNIS:  B-R-A-N-D-I --

17             THE CLERK:  E-Y.

18             MR. DENNIS:  D-I, got it.

19             THE CLERK:  Underscore --

20             MR. DENNIS:  I think I just found it.

21             THE COURT:  Are you able to forward it?

22             MR. DENNIS:  I just did, Your Honor.

23             THE COURT:  Okay.  While we're doing that, then let's

24   talk about another issue I saw, something about inspection of

25   the property.  So I thought we want to look -- we want to go
```

1    back to inspect.

2              The Defense said, maybe, but there's an issue.  And

3    I -- some of these issues may have been cleared up since --

4              **MR. DENNIS:**  I don't think there is --

5              **THE COURT:**  -- you-all filed with this.

6              **MR. DENNIS:**  -- an issue on inspection, Your Honor.

7    What we -- in the report to the Court, what we indicated is

8    that when we got Mr. Chriss' pre-suit letter, what we

9    suggested, since he had referred to reports listing what the

10   problem was, that he get us that so we would have a laundry

11   list.

12             And then we could go and look at the building again

13   knowing what it is that --

14             **THE COURT:**  Okay.  So --

15             **MR. DENNIS:**  But that didn't happen.

16             **THE COURT:**  So you-all haven't inspected the

17   property --

18             **MR. DENNIS:**  We --

19             **THE COURT:**  -- because you all are waiting on --

20             **MR. DENNIS:**  We -- the insurance company was -- had

21   representatives at this building over a period of six months.

22   And more than $4 million has been paid for this building.

23             So just going to look at it again, absent knowing

24   exactly what it is they say that we did wrong --

25             **THE COURT:**  But you're --

16

1          **MR. DENNIS:**  -- is not going to --

2          **THE COURT:**  -- wanting to do that at some point?

3          **MR. DENNIS:**  Yes, Your Honor.

4          **THE COURT:**  Okay.  But -- so that's not something we

5    need to address today.  I just thought there might be an issue

6    on that, but maybe not.  Maybe you all need to wait to clear up

7    the other matter on the damages.

8          What was the issue on the appraisal, same thing, to

9    itemize --

10         **MR. DENNIS:**  Mr. Chriss --

11         **THE COURT:**  -- the damages?

12         **MR. DENNIS:**  -- asked us if we would pursue

13   appraisal.  But it's based -- yes, Your Honor, it's the same

14   thing.

15         Absent knowing exactly what we're talking about, I

16   really can't counsel my client as to whether or not there are

17   appraisal issues.  There may be some issues here that are not

18   subject to appraisal under Texas law.

19         **THE COURT:**  Okay.

20         Do you want to address that now?

21         **MR. CHRISS:**  It's not necessary, Your Honor, unless

22   you need me to.

23         **THE COURT:**  No.  And then what about discovery

24   issues, maybe electronic discovery?  I think you-all were

25   trying to work out some agreement on that, but maybe got held

1   up and that's not happened, or has it happened now?

2           **MR. DENNIS:**  I believe that we just reached an

3   agreement this morning.  And Mr. Chriss and I are going to work

4   out a short document later today or tomorrow to deal with that.

5           **THE COURT:**  Okay.  So --

6           **MR. CHRISS:**  I do want to address that briefly,

7   Judge --

8           **THE COURT:**  Go ahead.

9           **MR. CHRISS:**  -- if I may.

10          **THE COURT:**  Yes.

11          **MR. CHRISS:**  What I've agreed to and what I've told

12  Counsel is I'm going to produce the documents in the format in

13  which they're ordinarily kept in the course of business.

14          I'm not going to manipulate them, or turn them into a

15  searchable database or any of this other stuff, because it's

16  going to cost me over $20,000 to do that.  And that's the way

17  he's requested the documents.

18          And I responded that I'm going to produce them the

19  way they are.  I'm not going to fool with them, scrub them, you

20  know, mess with them; but I'm just going to produce them the

21  way they are.

22          **THE COURT:**  Okay.

23          **MR. CHRISS:**  And --

24          **THE COURT:**  And that's --

25          **MR. CHRISS:**  -- that's what --

18

```
 1            THE COURT:  -- the way --

 2            MR. CHRISS:  -- we've agreed to.

 3            THE COURT:  -- the Defense requested, correct?

 4            MR. DENNIS:  Well, given the number of documents in

 5   this case, Your Honor, we have probably had -- we have a

 6   process that we've used in many cases to streamline, so as for

 7   both sides, so that each side to the litigation has a database

 8   that they can use to search documents, search metadata, and it

 9   becomes a very efficient process.

10            Mr. Chriss has stated that he has not -- is not

11   interested in doing that.  And so he wants to produce documents

12   as he just described.

13            Now, they will not be Bates-Stamped, because you

14   cannot Bates-Stamp documents that way.  So my client is now

15   going to have to undertake the expense of processing those

16   documents and Bates-Stamping them.

17            THE COURT:  Okay.  But you-all have an agreement on

18   that?

19            MR. DENNIS:  It looks like it, Your Honor.

20            MR. CHRISS:  Yes, ma'am.

21            THE COURT:  Yeah.

22            MR. DENNIS:  I mean, we're going to produce

23   documents.  As I explained to Mr. Chriss, we will put them in

24   PDFs and send them to him.  We will send him Excel documents in

25   native formats so that he can see the formulas.
```

```
1              THE COURT:  Okay.

2         So did we get the email, Brandy?

3              THE CLERK:  We did, Your Honor.  There's several

4    documents that I received previously --

5              THE COURT:  I just want to see the --

6              THE CLERK:  -- and I'm not sure what --

7              THE COURT:  -- two pages.

8              THE CLERK:  -- two pages we're referring to.  And

9    there's --

10             MR. CHRISS:  There's seven interrogatories, Judge.  I

11   can't remember exactly which ones we --

12             THE COURT:  Yeah, I just want to see the two pages

13   that the Plaintiff says lists -- itemizes the damages, kind of

14   cleaned version versus an extensive document.

15             MR. DENNIS:  Number --

16             MR. CHRISS:  It would be Number --

17             MR. DENNIS:  -- 4.

18             MR. CHRISS:  -- 1, Number 2.

19             MR. DENNIS:  They're basically --

20             MR. CHRISS:  This would be it, I think.

21             MR. DENNIS:  1 and 4.

22             MR. CHRISS:  Yeah, 1 and 4.

23             THE COURT:  So it wasn't -- so it's the answers to

24   interrogatories; it wasn't two -- like a letter, two-page

25   letter, saying here --
```

1      **MR. DENNIS:**  This is what we got just yesterday, Your

2  Honor.

3      **THE COURT:**  Okay, where's the two pages that the

4  Plaintiff was --

5      **MR. CHRISS:**  It's Number -- it's an answer to Number

6  1 and answer to Number 4.  What did -- the question is, what's

7  your damage calculation or specify what the damage was that was

8  done to the building.

9      **THE COURT:**  Okay.  I don't -- let's see.  So it's --

10  if dig through here, am I going to have to do it myself, sit

11  down and, okay, 4(b)?

12      **MR. CHRISS:**  No, I -- Your Honor, I'll be glad -- I

13  just -- I'll be glad to tell you that -- what those

14  interrogatory answers say is what I told the Court before,

15  which is we've produced documents to you that indicate that we

16  have already paid, incurred, or contracted for, in excess of --

17      **THE COURT:**  Right.

18      **MR. CHRISS:**  -- $10 million.

19      **THE COURT:**  But what Mr. Dennis said was that he

20  requested a kind of itemization.  And I thought the Plaintiff

21  said, we produced a two -- two pages that does exactly that.

22      **MR. CHRISS:**  I think it does exactly that, because it

23  refers to the Excel spreadsheet --

24      **THE COURT:**  Do you know what we're going to do for

25  the record, Mr. Chriss?  Then you're going to just read this

21

1    one by one into the record what -- damage to x -- because I'm

2    not going to sit here and read just -- we'll --

3            MR. CHRISS:  Sure.

4            THE COURT:  -- and say how much it is and then --

5            MR. CHRISS:  Sure.

6            THE COURT:  -- the next one and how much it is, and

7    the next one and how much it is.  And that way, we'll all be on

8    the same page as to what damages are being claimed for certain

9    items.

10           MR. CHRISS:  Okay.  We understand that Lexington --

11   that the Lexington policy has a 4.3115 million-dollar

12   deductible.

13           THE COURT:  Okay, no, just item -- item, we're

14   claiming damage for doors, $10,000; we're claiming damage for

15   windows, $100,000.

16           MR. CHRISS:  That's referred to, Judge.

17           THE COURT:  I know, but I want you to say it for the

18   record because I don't want to go through and pick it out

19   myself.

20           MR. CHRISS:  It's not narratively stated; it's in the

21   attachments.

22           THE COURT:  I want you to state it for the record;

23   okay?  Tell me what damage -- what items of damages are you

24   claiming and how much.  And if you need some time, that's fine.

25           MR. CHRISS:  Yes, I'm going to need time to do that,

1    Judge.

2          **THE COURT:**  Okay.  Then let's address one -- let's

3    address the trial date.  And then maybe we can recess and you-

4    all can work on that; and we can get it on the record, or you

5    can do an email, or something.

6          **MR. CHRISS:**  Right, Judge.  What I'll have to do is

7    I'm going to have to go back to my office and get the Excel

8    spreadsheets that I've already produced to Counsel.

9          **THE COURT:**  Okay.  But I thought you told me there

10   was a two-page document that already did that, what Mr. Dennis

11   wanted.  No, there's not, right?  Saying x, we are claiming

12   damages for all these windows, and that's $100,000; we're

13   claiming damaged for 50 doors, and that's $250,000.

14         I mean, we don't have that sort of list, right?

15   You're saying it's in there; I don't want to read through that

16   and pick it out.

17         **MR. CHRISS:**  Right.

18         **THE COURT:**  And I'd rather move you-all along.  And

19   it sounds like I'm going to have to do that.

20         **MR. CHRISS:**  No, Your Honor; I --

21         **THE COURT:**  So I don't want to.

22         **MR. CHRISS:**  I will do that for you, Your Honor.

23         **THE COURT:**  Thank you.

24         **MR. CHRISS:**  I will do that for you.

25         **THE COURT:**  Okay.  And we can break in a little bit

23

1  after we talk about the trial date.  And we can do it on the

2  record or you can say you'll do it by a certain date.

3          So let's look at trial dates.  And it's my

4  understanding there's kind of an issue between March of 2020 or

5  May of 2020, with, I believe, Plaintiff wanting the March date

6  and Defense wanting the May date; is that right?

7          **MR. DENNIS:**  Yes, Your Honor.

8          **THE COURT:**  Okay.

9          **MR. DENNIS:**  Your Honor, there were two issues, I

10  think, really with the dates.  The first is, I think a May

11  trial date is appropriate, given the fact that we're here in

12  February and we're just getting into document production, into

13  interrogatory responses, and we're going to need that time.

14          But what the Defendants had suggested, respectfully,

15  was that we finish fact discovery by August 1 of 2019, and then

16  do expert reports and discovery of experts through the end of

17  2019, and not have fact discovery be open while we're doing

18  expert discovery.

19          **THE COURT:**  All right.

20          Mr. Chriss?

21          **MR. CHRISS:**  Your Honor, I've talked to Counsel about

22  this.  And other than the date, the only real disagreement is I

23  told him that the Court normally just establishes a discovery

24  deadline, as opposed to some kind of variegated discovery

25  deadline, and that, you know, if he wants to do his in phases,

24

1   that's fine, but I don't necessarily want to.  And so --

2          THE COURT:  Okay.  So unless there's an agreement on

3   that, then I'm just going to do a standard scheduling order --

4          MR. CHRISS:  Right.

5          THE COURT:  -- which just sets the deadline.  So --

6          MR. DENNIS:  Thank you, Your Honor.  In that case,

7   Defendants would respectfully request that we use the schedule

8   that we suggested with a fact discovery cutoff of December

9   31 --

10         THE COURT:  You mean --

11         MR. DENNIS:  -- sorry, discovery cutoff.  Excuse me,

12  Your Honor; I apologize.

13         THE COURT:  Okay.

14         So -- and Mr. Chriss, you're wanting the March date?

15         MR. CHRISS:  Yes, Your Honor; I'm just -- it's

16  important for legal reasons for me, for the -- to show on the

17  record that I'm not delaying this, and that it's the insurance

18  company who wants additional time.

19         THE COURT:  So no -- let's see.  So it's pretty clear

20  Lexington is requesting additional time here.  I -- so about --

21  you-all are looking at seven to 10 days in 2020.

22         I actually think that May does not work then.  We can

23  try an April date.  But let me pull up this calendar.  I

24  foresee a couple of issues around that time period.  Let me get

25  that.

25

1          Yeah, that's not -- May would not work for the Court.

2     We could try April, possibly.  Brandy, what dates -- what trial

3     weeks would we have in April for a two-week -- possibly two-

4     week trial?

5               **THE CLERK:**  April 13th, Your Honor.

6               **THE COURT:**  So is that acceptable, Counsel?

7               **MR. CHRISS:**  I'm sorry; April the --

8               **THE COURT:**  13th is on a Monday.  And then if you-all

9     need the seven to 10 days, we'd run into that following week.

10              **MR. CHRISS:**  Yes, that's fine, Your Honor.

11              **THE COURT:**  Okay.

12         Mr. Dennis?

13              **MR. DENNIS:**  Yes, Your Honor.

14              **THE COURT:**  Okay.  So Brandy will issue a scheduling

15    order setting up for trial April 13th.  And we'll send that out

16    with just a discovery deadline.

17              **MR. CHRISS:**  Your Honor, I did find the answer --

18              **THE COURT:**  Okay.

19              **MR. CHRISS:**  -- that I was referring to and if you

20    want me to read it into the record, I will.  I've marked the

21    portion of it --

22              **THE COURT:**  That's perfect.

23              **MR. CHRISS:**  -- if you'd rather read it yourself.

24              **THE COURT:**  No; why don't you read it into the

25    record?

26

1          **MR. CHRISS:**  Okay.  "Plaintiff contends that the

2    cover damage done to the building by Hurricane Harvey will

3    require in excess of $12 million to repair.

4          Plaintiff believes that every door and window was

5    compromised in some way by the storm.  Four different third-

6    party experts have evaluated the window and door systems and

7    provided damage reports that Sandpiper believes in one way or

8    another support the association's damage claims.

9          You are directed to these documents and the

10   documents" --

11         **THE COURT:**  Okay; so you're not giving an amount

12   then?

13         **MR. CHRISS:**  Yes, Your Honor.

14         **THE COURT:**  Where's the amount for the doors and

15   windows?

16         **MR. CHRISS:**  Doors and windows, I have two bids, one

17   for $6,028,395.22 --

18         **THE COURT:**  Okay.

19         **MR. CHRISS:**  -- and one for $5,086,580.  In addition,

20   substantial interior demolition and repair that's required, you

21   are directed to the most recent summary of Hurricane Harvey

22   expenses previously produced showing $10,751,492.88 in

23   Hurricane Harvey expenses incurred or contracted for as of

24   December 6th, 2018.

25         **THE COURT:**  For the demolition -- for interior --

27

1          **MR. CHRISS:**  Demolition --

2          **THE COURT:**  -- demolition?

3          **MR. CHRISS:**  -- and repair expenses.  And the

4    document I am directing Counsel to in that answer, that comes

5    to $10,751,492.88, was produced to Counsel.  It's an Excel

6    spreadsheet that shows the --

7          **THE COURT:**  But that's not what he's asking for.

8    He's got -- okay; we have doors and windows at $6 million or $5

9    million-plus, whatever the invoices show, I guess --

10          **MR. CHRISS:**  I've got bids -- I produced --

11          **THE COURT:**  Bids?

12          **MR. CHRISS:**  -- bids to him for that.

13          **THE COURT:**  Okay.  So that's the only thing you have

14    separated out?

15          **MR. CHRISS:**  Well, I provided him with an Excel

16    spreadsheet.

17          **THE COURT:**  I know that.  That's not what he's

18    asking.  So I think you're going to have to take a deposition

19    of the Plaintiff to get that out, to get the details out

20    exactly.

21          And maybe we need to do that up front.  And maybe

22    it'll just be regarding that issue and then, you know, can

23    depose him again later on --

24          **MR. CHRISS:**  Or Judge --

25          **THE COURT:**  -- as a whole.

1          **MR. CHRISS:**  -- I can supplement --

2          **THE COURT:**  But you're not -- I don't think you're

3    going to get him what he needs, is what the problem -- I think

4    he needs details, a little more details than --

5          **MR. CHRISS:**  Well, I can take the Excel spreadsheet

6    and turn it into an interrogatory answer and give him the

7    specifics -- list for him the specific numbers and the specific

8    amounts.

9          That's -- all I'll been doing is just transcribing it

10   from the Excel spreadsheet into an interrogatory answer.  I'm

11   happy to do that.

12         **THE COURT:**  Okay.

13         Mr. Dennis?

14         **MR. DENNIS:**  We'll take that, Your Honor.  And then

15   as Your Honor suggested, we'll do it -- we'll take Mr. Chriss'

16   supplemented interrogatory response-- thank you -- and we'll go

17   from there.  We'll do the best we can.

18         **THE COURT:**  Okay.

19         So nothing else to address on that issue?  Anything

20   else this morning then from the Plaintiff?

21         **MR. CHRISS:**  No, Your Honor.

22         **THE COURT:**  And from the Defense?

23         **MR. DENNIS:**  If we could just have a date, Your

24   Honor, by which Mr. Chriss could give us that supplementation?

25         **THE COURT:**  Okay.

1          Mr. Chriss, how much time do you need?

2          **MR. CHRISS:**  Again, 30 days.  I -- the -- and just

3    with respect to the production of documents, Judge, I'm dealing

4    with 64 requests for documents from the Defendant.  And he's

5    given me an extension until Tuesday to respond.

6          And I'm going to respond.  It's going to take me a

7    while to produce all these documents.  I mean, I just want to

8    state that on the record because we're dealing with thousands

9    of emails that I've got to go through and make sure, you

10   know --

11         **THE COURT:**  You say --

12         **MR. CHRISS:**  -- where --

13         **THE COURT:**  -- you need more time than Tuesday, or

14   you're just -- what are you asking?

15         **MR. CHRISS:**  All I'm saying -- I don't need more

16   time --

17         **THE COURT:**  Okay.

18         **MR. CHRISS:**  -- I don't need more time to respond.  I

19   am going to -- it's going to be a rolling production, is all

20   I'm saying.  It's going to -- it's -- I'm going to have to

21   produce these documents in batches because there's so many of

22   them.

23         **THE COURT:**  Okay.

24         Mr. Dennis?

25         **MR. DENNIS:**  That can become very problematic, Your

30

1    Honor.  I don't know how I'm supposed to take somebody's

2    deposition on date x if I use the documents --

3            **THE COURT:**  Well, I mean, how much time do -- need to

4    produce the documents, I guess, Mr. Chriss, understanding that

5    it's going to take some time?  So about how much time would

6    that require?

7            **MR. CHRISS:**  We have a trial setting that is more

8    than a year away.  I've got over 100 gigabytes of data that I'm

9    aware of.  And I'm still collecting it.

10           Subject to being able to supplement my responses, I

11   guess another 60 days.

12           **THE COURT:**  So you think within 60 days you can

13   provide all of that?

14           **MR. CHRISS:**  I -- within 60 days, I should be able to

15   provide all the documents that I'm aware of that are responsive

16   to these 64 requests subject to my client's privilege and --

17           **THE COURT:**  Okay.  I mean, that doesn't sound like --

18   out of line.

19           **MR. DENNIS:**  Well, Your Honor, we served a document

20   request in the middle --

21           **THE COURT:**  I'm sorry?

22           **MR. DENNIS:**  We served a document request in the

23   middle of December.  So by the time --

24           **THE COURT:**  That's not that long --

25           **MR. DENNIS:**  Well --

31

1          **THE COURT:**  -- when we're talking about so many

2    documents.

3          **MR. DENNIS:**  60 days from -- we are ready, Your

4    Honor, to produce from our side next week.  We --

5          **THE COURT:**  Well, go ahead.

6          **MR. DENNIS:**  I understand that.

7          **THE COURT:**  He needs 60 days.  I don't think that's

8    unreasonable.

9          **MR. DENNIS:**  I appreciate that, Your Honor.  But that

10   will then put us into mid-April --

11         **THE COURT:**  Okay.

12         **MR. DENNIS:**  -- by the time that we get documents.

13   And we're looking at doing expert reports by August from the

14   Plaintiff's side.

15         **THE COURT:**  Or September because -- are you looking

16   at the March --

17         **MR. DENNIS:**  September.  I apologize, Your Honor;

18   September, you're right.  It's -- we'll go with that if that's

19   what it's going to take.  I'm just pointing out that that's

20   going to get a little --

21         **THE COURT:**  And if it becomes a problem, we can visit

22   again about it.  I just don't think 60 days for the

23   voluminous -- sounds like documents we're looking at here is

24   unreasonable.

25         So Mr. Chriss, if you can provide that then within 60

32

1   days, then --

2          **MR. CHRISS:**  I appreciate that, Your Honor.

3          **THE COURT:**  What else from the Plaintiff this

4   morning?

5          **MR. CHRISS:**  That's all from us, Judge.

6          **THE COURT:**  Okay.

7          And from the Defense?

8          **MR. DENNIS:**  Nothing else, Your Honor.

9          **THE COURT:**  Okay.

10         Thank you.  You can be excused.

11         **MR. DENNIS:**  Thank you for your time, Your Honor.

12         **THE COURT:**  Yes.

13      **(Proceeding adjourned at 9:02 a.m.)**

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    March 4, 2019

            Signed                                      Dated


              *TONI HUDSON, TRANSCRIBER*