UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


SANDPIPER CONDOMINIUM COUNCIL )      CASE NO: 2:18-CV-00414
OF CO-OWNERS, INC.,           )
                             )             CIVIL
             Plaintiff,       )
                             )       Corpus Christi, Texas
    vs.                       )
                             )    Wednesday, June 26, 2019
LEXINGTON INSURANCE COMPANY,  )
                             )    (11:35 a.m. to 12:25 p.m.)
             Defendant.       )
_____

PRE-MOTION CONFERENCE

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE



**APPEARANCES:**          SEE PAGE 2


Court Recorder:        Genay Rogan

Clerk:                 Brandy Cortez

Court Security Officer:  Adrian Perez

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 18668
                       Corpus Christi, TX 78480-8668
                       361 949-2988




**Proceedings recorded by electronic sound recording;
transcript produced by transcription service.**

<u>**APPEARANCES**</u>:


For Plaintiff:              WILLIAM J. CHRISS, ESQ.
                           KATHRYN SNAPKA, ESQ.
                           The Snapka Law Firm
                           606 N. Carancahua St., Suite 1511
                           Corpus Christi, TX 78401

For Defendant:              JAMES M. DENNIS, ESQ.
                           Mound Cotton, et al.
                           One New York Plaza
                           New York, NY 10004

South Texas Contracting: PHILLIP A. MC KINNEY, ESQ.
                           8207 Callaghan Rd., Suite 100
                           San Antonio, TX 78230

1    **Corpus Christi, Texas; Wednesday, June 26, 2019; 11:35 a.m.**

2                        **(Call to order)**

3            **THE COURT:**  Court calls Cause Number 2:18-cv-414,

4    *Sandpiper Condominium Council versus Lexington Insurance*

5    *Company.*  And I apologize for the wait, counsel.  I had a bunch

6    of sentencings this morning that ran over.  So if the

7    Plaintiffs will announce for the record?

8            **MR. CHRISS:**  William Chriss and Katherine Snapka for

9    the Plaintiff, Sandpiper Condominium Council of Owners.

10           **THE COURT:**  Okay.  And the Defendant appearing by

11   phone, Mr. Dennis, correct?

12           **MR. DENNIS:**  Yes, James Dennis for Lexington

13   Insurance Company.

14           **THE COURT:**  All right.  And then, Mr. McKinney,

15   you're appearing.  I know you have filed a motion to quash for

16   a third party.  I'm not sure, maybe since you're on now we can

17   address that.  I don't know if there's been a response on that

18   yet.  But anyway let's proceed.  This was a -- set as a pre-

19   motion conference because the Plaintiff had requested some time

20   from the Court regarding maybe a motion to compel and so I'm

21   going to let Mr. Chriss proceed.

22           **MR. CHRISS:**  Yes, your Honor.  I'm not sure we need

23   Mr. McKinney because it's my understanding that we actually

24   agreed to resolve the motion to quash that he filed for a

25   nonparty.

1          **THE COURT:**  Okay.

2          **MR. CHRISS:**  So we might want to start with that.

3          **THE COURT:**  Okay.  So, Mr. Dennis, anything on that?

4          **MR. DENNIS:**  Yes, your Honor.  This is James Dennis

5    for Lexington.  I've spoken with Mr. McKinney and we have

6    reached a resolution of his issue with regard to the subpoena.

7    And I believe he will tell you that they are going to withdraw

8    their motion.

9          **THE COURT:**  Is that right, Mr. McKinney?

10          **MR. MCKINNEY:**  Yes, Judge.  We've had a chance to

11   resolve the concerns and I think the agreement is basically

12   that I'm going to provide them with a written outline of what

13   the -- our requested retainer is for, and they will forward it

14   and we will begin work immediately.  And they've also provided

15   a better outline in response to my objections to the

16   generalness of the subpoena and we'll begin working with the --

17   with a new outline that Ms. McGonagall (sic) has provided us.

18          **THE COURT:**  Okay, so it sounds like that's resolved.

19   I'm going to terminate that motion then, okay, Mr. McKinney?

20          **MR. MCKINNEY:**  Yes, Judge, thank you.

21          **THE COURT:**  All right.  And so you want to get off

22   the phone now or do you want to --

23          **MR. MCKINNEY:**  I would appreciate it.

24          **THE COURT:**  Or do you want to stay and listen but

25   you're -- okay, thank you, you can be excused if you'd like.

1          **MR. MCKINNEY:**  Thank you, Judge, I appreciate it.

2     **(Mr. McKinney excused)**

3          **THE COURT:**  Okay, Mr. Chriss?

4          **MR. CHRISS:**  Yes, your Honor.  In accordance with the

5     Court's standing order and the initial pretrial conference

6     order scheduling order the Court entered, we just want

7     permission to file two motions.  One is motion to compel

8     answers to interrogatories and the other is a motion for

9     protective order and to quash with respect to three subpoenas

10    of corporate officers or individuals who are part of my client,

11    the condominium council.  We've already filed objections to the

12    subpoenas.  We're going through documents and agreed to or were

13    going to produce some documents in response to -- or to

14    supplement our responses to request for documents, request for

15    production under Rule 34.  But what happened in the case is --

16    well, we can just take them one at a time.

17         The motion to compel's very simple.  At the initial

18    pretrial conference, Lexington demanded that we answer their

19    interrogatories by giving them specific information about

20    everything that was damaged and how much it cost.  We did that

21    to the penny in accordance with the Court's order.  When we

22    asked them to do the same thing, they refused to do it.  And

23    I've asked them four times and they refused four times.  And

24    they're entitled to know what we say the damages are; we're

25    entitled to know what they say the damages are.  That's all

1   we're asking.

2          **THE COURT:**  Okay, let me let Mr. Dennis respond to

3   that then, to that motion to compel --

4          **MR. DENNIS:**  Yes, this is --

5          **THE COURT:**  -- regarding the answers to the

6   interrogatories.

7          **MR. DENNIS:**  Yes, your Honor.  There appear to be I

8   believe five interrogatories at issue which we outlined in our

9   letter.  Interrogatories five -- or interrogatory number five

10  has nothing to do with costs.  It has to do with identifying

11  the names and addresses of --

12         **THE COURT:**  Okay, well, can I do this?  Let me just

13  make sure what -- Mr. Chriss, if you want to direct the Court

14  to which interrogatories; is it the ones that are set forth

15  here in Mr. Dennis's letter or --

16         **MR. CHRISS:**  Yes, they are, Judge.

17         **THE COURT:**  Okay.

18         **MR. CHRISS:**  Number five simply asks them who was

19  involved essentially in the adjustment of the claim.  They

20  won't answer that.  They just refer me to 45,000 pages of

21  documents.  And then six, seven, eight, nine, ten, 11, 12 all

22  ask essentially what their current belief is with respect to

23  the amount of the claim.  One of the reasons this is important,

24  your Honor, is because I received a letter from Lexington a

25  year ago where they said that once we provided them with

1  information to the effect that we had completed repairs, a

2  sufficient amount of repairs, they were holding $2 million that

3  they would pay to my client.  They not only will not pay that

4  $2 million to my client, they won't tell us why they won't pay

5  that money to our -- to my client, nor will they --

6          **THE COURT:**  Okay.

7          **MR. CHRISS:**  -- tell us how much money they think

8  they owe my client.

9          **THE COURT:**  All right, so go ahead, Mr. Dennis.

10         **MR. DENNIS:**  Yes, your Honor.  This is James Dennis.

11 Interrogatory number five asks for the names and addresses of

12 persons who participated in the investigation.  As we responded

13 in our interrogatory response, all of those folks were

14 identified in Lexington's mandatory initial production, our

15 initial disclosure.  So all those folks were identified many,

16 many months ago.  And Mr. Chriss has never objected to that

17 since --

18         **THE COURT:**  So --

19         **MR. DENNIS:**  -- and so asking --

20         **THE COURT:**  I'm sorry, and I'm sorry, it's kind of

21 hard when we do phone conferences because I like to cut in just

22 to kind of wrap up each little section.  But so the defense is

23 saying any response to interrogatory six would have been

24 covered in the --

25         **MR. DENNIS:**  Five.

1            THE COURT:  -- initial disclosures.

2            MR. DENNIS:  It's number five, your Honor.

3            THE COURT:  And you would have specified that that

4    was what was this asking for the -- anybody participating in

5    any investigation, that all of those names would have already

6    been given?  Because the initial --

7            MR. DENNIS:  Yes, your Honor.

8            THE COURT:  -- disclosure sometimes has some wording.

9    It says something about you're identifying people that you may

10   use to support your claims.  So when I read this interrogatory

11   number six, I just thought, well maybe we're just trying to

12   make sure there's no other people involved.  But so you're

13   saying everyone who may have been involved in any investigation

14   of any type has already been identified.

15           MR. DENNIS:  Those people went on our initial

16   disclosure and there are also documents, there are reports and

17   letters in our document production.  To the extent that there

18   may have been one or two names that we missed, they're on the

19   reports and letters that those folks issued.

20           THE COURT:  Okay.  You want to say anything on that,

21   Mr. Chriss, on --

22           MR. CHRISS:  Yeah, --

23           THE COURT:  -- interrogatory five?

24           MR. CHRISS:  Yeah.  This is just the exactly the

25   same -- the Court told me that's not good enough and you need

1    to go ahead and answer the interrogatory.  I'm simply asking

2    for the same courtesy from the other side.  The initial

3    disclosures tell you who you're going to rely on to prove your

4    case.

5            **THE COURT:**  Right.  So I would -- I mean, this

6    interrogatory number five is a little bit different than what

7    the initial disclosures require, I mean, because it could

8    capture more people.  It's my understanding defense is saying

9    there's not any more people.  But it is a little bit different,

10   Mr. Dennis, right?

11           **MR. DENNIS:**  It's arguably worded differently, your

12   Honor, but I don't think it captures any more people.

13           **THE COURT:**  Okay, well, how many people are we

14   talking about?  Because would it be that big a deal to just put

15   them down as an answer?

16           **MR. DENNIS:**  Here's what -- your Honor, we probably

17   already spent more time on this than it's worth.

18           **THE COURT:**  Yes.

19           **MR. DENNIS:**  I will go back to the initial

20   disclosures.  If there's anybody else that we would identify,

21   we'll send the names.

22           **THE COURT:**  Okay.  So how many people are we talking

23   about in your initial disclosures, though?

24           **MR. DENNIS:**  I'd have to pull it up, your Honor.

25           **THE COURT:**  Okay, well, I tell you what, just make it

1    easier for the Court, just answer that interrogatory, okay?

2              MR. DENNIS:  Very good, your Honor.

3              THE COURT:  All right, very good, let's move on.  So

4    we are looking at six.  Mr. Dennis listed six, nine, and ten,

5    correct, Mr. Dennis?

6              MR. DENNIS:  Yes, your Honor.

7              THE COURT:  Okay, you can proceed.

8              MR. CHRISS:  Yes, Judge, --

9              MR. DENNIS:  On number --

10             MR. CHRISS:  Who would you like to proceed, your

11   Honor.

12             THE COURT:  Well, I was going to see -- let

13   Mr. Dennis respond.

14             MR. CHRISS:  Okay.

15             MR. DENNIS:  On number six, your Honor, the

16   interrogatory which you have in front of you is extremely

17   broad.  It's basically asking us to describe the entire

18   litigation which obviously is not properly the subject of an

19   interrogatory.  Secondly, the interrogatory is -- it's very

20   difficult if not impossible to even understand.  Further, there

21   are a number of aspects of this claim that were never submitted

22   to Lexington as part of the claim.  These are documents and

23   items that have been identified by Sandpiper since this

24   litigation commenced.  And we are going through the thousands

25   of documents that have been produced in support of those.  So

1    in short, the document request is extremely overbroad, it asks

2    for information that we don't even necessarily have yet, and

3    shouldn't -- I mean, we shouldn't be obligated to answer this

4    type of broad interrogatory basically saying, tell me all about

5    your case, tell me all about your defenses, tell me all about

6    your issues, and tell me how it all works, which is basically

7    what this interrogatory is.

8           **THE COURT:**  Okay.  Mr. Chriss?

9           **MR. CHRISS:**  That's not what the interrogatory asks,

10   Judge.  It simply asked how the occurrences and damages

11   (indisc.) the basis of this suit occurred and what their claim

12   or contention is with respect to any cause or contributing

13   cause of those damages.

14          **THE COURT:**  Yeah, I really don't see that as being

15   overbroad, Mr. Dennis.

16          **MR. DENNIS:**  Well, your Honor, for instance, one of

17   the large items that has been claimed in this matter is that

18   Lexington has to pay to fix or replace every exterior window

19   and sliding door on the building.  Now, during discovery, one

20   of the things that we found out is that many of the issues that

21   have been complained of that were allegedly caused by Harvey

22   have preexisted at that building for many years.  Now,

23   obviously, you know, the documents in support of that and those

24   types of items are not something that we would have known

25   absent discovery in this case and which we will not have full

12

1  information on until discovery --

2          **THE COURT:**  Okay, but --

3          **MR. DENNIS:**  -- is concluded.

4          **THE COURT:**  -- you know you're going to make that

5  contention, right, that there was preexisting damage, right?

6  That's what it sounds like.

7          **MR. DENNIS:**  Yes.

8          **THE COURT:**  Okay, then you would say that, right?

9          **MR. DENNIS:**  That would certainly be an answer as of

10 today but it would certainly not be a complete answer --

11         **THE COURT:**  Well, you --

12         **MR. DENNIS:**  -- and if my client --

13         **THE COURT:**  -- need to just answer as of today,

14 right, what you know today, what your contentions are, what

15 your claims are, right?  You're supposed to do that anyway

16 under the rules.  You may not know --

17         **MR. DENNIS:**  Well, --

18         **THE COURT:**  -- everything but what you do know, you

19 answer, right?  So remember when you were pressing --

20         **MR. DENNIS:**  Yes.

21         **THE COURT:**  -- Mr. Chriss the other day when we were

22 here on a discovery matter and we kept -- and then I started

23 pressing him, too, to get me some information?  Okay, that --

24 I'm starting to feel that that's what you're going to make me

25 do to you now.

1          **MR. DENNIS:**  Well, your Honor, the two situations are

2    not parallel.

3          **THE COURT:**  No, well, --

4          **MR. DENNIS:**  The issue that I pressed --

5          **THE COURT:**  I'm sorry, let's move on.  Why -- you

6    need to respond to that interrogatory number six.  What are

7    your contentions, of preexisting damage or whatever it may be,

8    what's wrong with responding like that?

9          **MR. DENNIS:**  It is premature, your Honor, because

10   what's going to happen is that if I respond today and then

11   Mr. Chriss deposes my client 60 days or 45 days from now, then

12   I'm going to supplement my response to this interrogatory at

13   some time in the future, and then the testimony from my client

14   at that point will not be accurate.

15         **THE COURT:**  Oh, my goodness.  I think you have this

16   all wrong.  You need to respond what you know when you're

17   answering that interrogatory.  Things may change and then you

18   supplement.  Is that not the way you do --

19         **MR. DENNIS:**  Yes, your Honor.

20         **THE COURT:**  Okay.

21         **MR. DENNIS:**  Yes, your Honor, obviously we have to

22   supplement.  That's --

23         **THE COURT:**  It's not premature.

24         **MR. DENNIS:**  -- no question about that.

25         **THE COURT:**  How can it be premature?  You know what

14

 1   your claims are right now, at least the one of preexisting

 2   damage, correct?

 3            **MR. DENNIS:**  Yes, your Honor.

 4            **THE COURT:**  Okay, answer the question, all right?

 5            **MR. DENNIS:**  Yes, your Honor.

 6            **THE COURT:**  All right, let's move on to what's next.

 7            **MR. CHRISS:**  He --

 8            **MR. DENNIS:**  Number nine.

 9            **THE COURT:**  Okay.

10            **MR. CHRISS:**  Number nine is the one that counsel has

11   identified.  He identified these interrogatories, Judge.  The

12   ones that I want answered include number nine, but I also want

13   number eight answered and number ten and number 11 and number

14   12.  I had identified those to counsel during our conference.

15   And so number seven asks if you contend you're not -- it's the

16   same, it's basically another version of the same inquiry.  "If

17   you contend you're not liable for the damages or costs suffered

18   by the Plaintiff, state why."

19            **THE COURT:**  How about I do this?  At least on the

20   contention ones, now knowing how the Court is -- would rule on

21   those, Mr. Dennis, why don't you attempt to answer them?  And

22   we can certainly reconvene or the Plaintiffs can file their

23   motion to compel if you all can't agree on that.  Or but if

24   they're related to the -- or same type of question, what's the

25   contention, what's your claim, and you weren't willing to

1  answer it looks like just from looking at interrogatory number

2  six, I've told you now answer the question, can you go back and

3  review and now that you know how the Court may rule on these

4  matters?

5       **MR. DENNIS:**  Yes, your Honor.

6       **THE COURT:**  Which would cover -- which one are the

7  contention interrogatories then?

8       **MR. CHRISS:**  Those would cover seven, eight, ten, 11,

9  and 12.

10      **THE COURT:**  Okay.

11      **MR. CHRISS:**  And that just leaves number nine then,

12  your Honor, which just asks --

13      **MR. DENNIS:**  (Indisc.)

14      **MR. CHRISS:**  -- if they have any information

15  pertaining to character, reputation, or credibility of any

16  person who is a party to this case or who has been identified

17  by a party as having knowledge of relevant facts.  It's a

18  standard interrogatory that just so that we don't get surprised

19  somebody -- where the other side comes in and goes, ah-ha,

20  well, you know, I'm going to wait until the day of trial and

21  I'm going to impeach your witness with the fact that whatever.

22      **THE COURT:**  Okay, Mr. Dennis, you want to address

23  number nine?

24      **MR. DENNIS:**  Yes, your Honor.  The first part of the

25  interrogatory is any information of that type with regard to a

1    party to the case.  Now, you know, the Sandpiper is a

2    corporation so there -- I'm not aware of any possible

3    information that could relate to the character of the Sandpiper

4    so I don't think -- you know, that may be a standard

5    interrogatory in a different type of case, but not to this one.

6    Secondly, with regard to the remainder of it where they ask

7    about anybody who has been identified as having knowledge of

8    the facts relevant to the subject matter of the litigation, the

9    Plaintiff has identified 163 people in their initial

10   disclosure.  Now, at this point, you know, I don't have

11   information of that type with regard to any of them, --

12           **THE COURT:**  Okay, can --

13           **MR. DENNIS:**  -- but I don't think --

14           **THE COURT:**  Then you say that, right?  And if

15   anything comes along, especially as you're getting closer to

16   trial, you supplement that.  If you don't have any information

17   on them, you say you don't have any on them on any of the

18   parties.  If something comes up, because the Plaintiffs don't

19   want to be surprised at trial with some of this evidence that

20   may come in, you would supplement, right?

21           **MR. DENNIS:**  Normally, your Honor, that would be

22   correct if we had a scope of the folks who are going to show up

23   at trial.  I don't think that anybody seriously contemplates

24   bringing 163 witnesses to trial.

25           **THE COURT:**  Okay, that's a different issue than what

1   this interrogatory number nine asks.  If you don't have

2   anything on anyone or know anything at all, you would answer

3   that, right?  And if something comes up on one of these people,

4   then you would supplement it.  Now, you all want to talk about

5   who are we really talking about here, I mean, we can do that, I

6   guess.  Mr. Chriss, do you want to address that?

7            **MR. CHRISS:**  Well, Judge, I don't -- I'm hoping I

8   won't have to call 163 people as witnesses.  I'm hoping that it

9   won't take that long to try this case.  I don't know if I'm

10  going to have to call every contractor and subcontractor who

11  did work on Sandpiper.  There's been $10 million worth of work

12  done to Sandpiper and I don't know if I'm going to have to call

13  every one of those people to testify that their costs are

14  reasonable and necessary.  I just don't know.  I don't know.

15  What I do know is that I don't want to be surprised.

16           **THE COURT:**  Yeah.

17           **MR. CHRISS:**  That's all I know.

18           **THE COURT:**  I think interrogatory number nine needs

19  to be responded to by the defense so -- if you don't have

20  anything, you just say I don't know anything.  You know, you've

21  been a lawyer long enough, things come up on different

22  witnesses as you're coming up through trial.  And if something

23  like that comes up regarding character reputation or whether

24  they're credible or not that you -- it's going to come in

25  during the trial, you need to let the other side know.  That's

1    what that's about.

2          Now, in terms of the other contention

3    interrogatories, what Mr. Chriss mentioned were interrogatories

4    seven, eight, ten, and 11, it's my understanding you're going

5    to go back and look at those, Mr. Dennis, see if you can

6    respond.  When you do respond, if Mr. Chriss feels he still

7    needs to file his motion to compel, then you can do that,

8    Mr. Chriss.  And then I'll -- what we'll usually do is do a

9    short turnaround on any response and then we have a hearing on

10   it.  Mr. Chriss?

11         **MR. CHRISS:**  Thank you, your Honor.  The only other

12   issue that I have is with respect to -- is a motion for

13   protective order that really has two components.  The first --

14   and both of them are addressed in my brief letter to the Court.

15   The first is on the subject of privilege logs.  We have been

16   demanded repeatedly to produce more and more privilege logs.

17   And we have produced in essentially something like over 200

18   pages of privilege logs, and that's because of the broadness of

19   the Defendant's request for documents.  And I know that courts

20   in general don't like discovery disputes; they have many more

21   things to do.  And so I really tried hard to avoid being here

22   today.  I've tried to be as agreeable as possible.  When we

23   serve dour request for documents on the Defendant, the response

24   we got was, we're not going to do privilege logs for anything

25   that happened after the lawsuit was filed.  And so my -- all I

1  want is equal treatment, again.  All I want is equal treatment.

2  I wish they had told me that before they demanded --

3           **THE COURT:**  But --

4           **MR. CHRISS:**  -- that I produce these (indisc.)

5           **THE COURT:**  I know, but I don't think either side can

6  just take that position, anything after "X" date is, you know,

7  privileged or whatever it may be, because that's not

8  necessarily so, right?

9           **MR. CHRISS:**  No, that's not necessarily --

10          **THE COURT:**  Yes.

11          **MR. CHRISS:**  -- not anything, your Honor, --

12          **THE COURT:**  Right.

13          **MR. CHRISS:**  -- certainly not.  But I'm talking about

14  proportionality.  What I'm talking about is that under the

15  Federal rules, discovery has to be proportional.  And there's -

16  - I agree, there's no need for us to produce privilege logs for

17  materials that have been generated once the lawsuit was filed.

18  I mean, otherwise, every time I make a note on a file folder, I

19  got to Xerox it and put it on the privilege logs.  That doesn't

20  make any sense.  All I'm asking is for the same protection that

21  counsel has arrogated to himself in response to my request for

22  (indisc.)

23          **THE COURT:**  Okay, let me hear from Mr. Dennis on that

24  then.

25          **MR. DENNIS:**  Yes, your Honor.  This issue is really

1    not about privilege logs per se.  This issue is the issue that

2    we identified in our letter to the Court and that we have

3    spoken to Mr. Chriss about, which is that Plaintiff's position

4    is that every document of any relevance to this matter among

5    the Sandpiper board of directors, the unit owners, and their

6    managing agent is attorney work product privileged.  And they

7    put all those things on a log and the log gives you the date,

8    the document, no substance of it, and the privilege assertion

9    is simply work produce.  And as we discussed in our letter,

10   that just can't possibly be right.  There are obviously

11   documents created after March 8th of 2018, many of them have

12   been produced already by Mr. Chriss which are not privileged

13   which are relevant to the action.  And so our position is that

14   the documents -- there cannot be just a blanket statement that

15   as of March 8th, 2018, all relevant documents after that date

16   are work product privileged.  That can't be right.  But that's

17   the position that Sandpiper has taken.  And the privilege log

18   that they have produced is in accord with that.

19            **THE COURT:**  Okay.

20            **MR. DENNIS:**  So we think that that cannot be right so

21   that -- I don't think that privilege can stand.

22            **THE COURT:**  Okay.  Mr. Chriss?

23            **MR. CHRISS:**  First of all, that's not Sandpiper's

24   position.  Secondly, that's not what I'm talking about.  I'm

25   simply talking about the convenience of not having to produce

1    privilege logs, both of us having the same responsibility with

2    respect to privilege logs.

3            **THE COURT:**  Okay, you --

4            **MR. CHRISS:**  That's all I'm asking.

5            **THE COURT:**  Right.  So he was talking about the

6    privilege logs, Mr. Dennis, in terms of not what's privileged I

7    guess or --

8            **MR. CHRISS:**  Right, we're working --

9            **THE COURT:**  -- how can I say those, yeah, --

10           **MR. CHRISS:**  -- through that with them, Judge.  We've

11   agreed to go through our privilege logs and look at them, we've

12   agreed to produce additional documents.  I just want protection

13   from the Court.  Why should I have to produce privilege logs

14   beyond those that they've agreed to produce?

15           **THE COURT:**  Right, because --

16           **MR. CHRISS:**  That's all.

17           **THE COURT:**  -- Mr. Chriss quoted you or quoted

18   Lexington here in his letter he submitted, said that Lexington

19   will not provide any privilege log as to documents after the

20   commencement of this action.  So I think he's just looking to

21   be kind of -- wants to do the same thing, right, Mr. Dennis?

22           **MR. DENNIS:**  As to -- your Honor, as to the post-

23   litigation privilege log issue which hadn't really been raised

24   by Mr. Chriss prior to the letter, I'm willing to talk to

25   Mr. Chriss and reach an accord on that.  But that does not

22

1    address in any way Sandpiper's privilege assertion of work

2    product after March 8th of 2018.  It just doesn't.

3            THE COURT:  Okay, here --

4            MR. DENNIS:  We went --

5            THE COURT:  Can I just butt in real quickly?  I know

6    when Lexington submitted their letter, there was several

7    discovery issues, concerns maybe as to how Plaintiff had

8    responded to some things.  When I read Mr. Chriss's letter, it

9    didn't sound like maybe you all had conferred on those.

10           MR. DENNIS:  We have, your Honor.

11           THE COURT:  Okay.

12           MR. DENNIS:  At length.  We sent a letter to

13   Mr. Chriss on June 10th setting forth almost verbatim the

14   issues to the Court.  We then sent an email to the Court and

15   Mr. Chriss indicating that we thought this might be a necessary

16   motion.  We met and conferred with Mr. Chriss on June 13th.  On

17   June 14th, I sent Mr. Chriss a letter confirming Sandpiper's

18   position as I understood it, which is that all post-March 8th,

19   2018 documents among Sandpiper's board of directors, the

20   managing agent, and Borden are all work product privilege.

21   And, I mean, he confirmed that to us during our meet-and-

22   confer.

23           THE COURT:  Okay, let me -- Mr. Chriss, maybe I

24   misread that.

25           MR. CHRISS:  Your Honor, what happened -- maybe

1    there's some confusion.  And it's just up to the Court how you

2    want to handle this.  What happened was I -- we had had

3    multiple conferences about all of these issues, the ones I

4    mentioned, the one Mr. Dennis -- the ones Mr. Dennis mentioned.

5    I am familiar with the Court's standing order.  I sent an email

6    to Ms. Cortez asking for a pre-motion conference.  She did not

7    hear back from us for a while and sent an email to us saying,

8    do the parties still need a pre-motion conference.  Mr. Dennis

9    responded and said, well, I don't know, we have to confer with

10   Mr. Chriss some more.  We conferred some more.  The issues that

11   I wanted a pre-motion conference on were not resolved so I

12   wrote Ms. Cortez back and said, yes, we still need a pre-motion

13   conference.  And when she scheduled the pre-motion conference,

14   what counsel did was take it upon himself to use that as an

15   opportunity to write this ten-page letter about things that

16   he's interested in.  But he never asked for a pre-motion

17   conference.  I'm not prepared to discuss those things with the

18   Court today.  I'm here to discuss the two motions that I've

19   indicated I would like to file and I need permission to file.

20   That's --

21            **THE COURT:**  Okay.

22            **MR. CHRISS:**  -- the dispute.  If the Court wants to,

23   you know, take the whole ball of wax, we can do that.  But I'm

24   still trying to cooperate with counsel with respect to all the

25   issues that he's raised.

1        **THE COURT:**  Okay.  So, Mr. Dennis, what was set

2   today, it's what it seemed like, was the pre-motion conference

3   that Plaintiffs had their two issues.  You provided some

4   additional information where there's concerns by the defense.

5   My understanding you guys were still talking and conferring on

6   that, right, Mr. Dennis, or no?

7        **MR. DENNIS:**  No.  On the issues that are raised in my

8   letter to the Court, and I'm a little surprised at this, but

9   the issues raised in our letter to the Court, Mr. Chriss has

10  told us, those are his positions.  There are some other issues

11  that we are working on and that hopefully we'll resolve.  But

12  the issues raised in my letter to the Court have been on the

13  table with Mr. Chriss since June 10th.  And we did advise the

14  Court that we wanted to have a pre-motion conference on these

15  issues.

16       **THE COURT:**  Okay, so -- and, Mr. Chriss, maybe you

17  can just respond generally to this.  So it appears from reading

18  the first portion of the defense's letter, the concern is this

19  blanket assertion about privileges for documents after the

20  March -- I believe it was the March 8th, 2018, and then what

21  kind of goes along with, there are the different privileges and

22  then who would be covered by that and then whether there was a

23  waiver.  And then you kind of go through some alternative

24  arguments there.  So do you want to address that, Mr. Chriss,

25  as to the Plaintiff's position?

1          **MR. CHRISS:**  I'm happy to address --

2          **THE COURT:**  Okay.

3          **MR. CHRISS:**  -- that, your Honor.  In fact, what I'd

4    like to do, if it is -- if the Court please, is I have a

5    document dated March the 8th that I'd like to tender to the

6    Court in-camera that --

7          **THE COURT:**  Okay.

8          **MR. CHRISS:**  -- indicates why I believe that March

9    the 8th is the date that Sandpiper anticipated litigation.

10         **THE COURT:**  Right.  But I think one of the concerns

11   is just because some -- there may be some privileged documents

12   that are after March 8th, but it's not every document, right?

13         **MR. CHRISS:**  That is correct, your Honor.

14         **THE COURT:**  Okay, so --

15         **MR. CHRISS:**  It is not every document.

16         **THE COURT:**  -- because that's the theme I was reading

17   through Mr. Dennis's letter here that you're --

18         **MR. CHRISS:**  No, what Mr. Dennis is very careful in

19   phrasing what he's saying.  It is Sandpiper's position that

20   internal communications among members of the board of directors

21   and their -- and/or their attorneys and their other agents and

22   consultants after the anticipation of litigation are privileged

23   as work product.  They're either privileged as work -- they're

24   either protected as work product under the Federal rules or

25   they're privileged as work product, which is a different

1    privilege, under this -- under the -- under Texas law, Texas

2    substantive evidentiary law.  And what -- and the legal -- just

3    to let the Court know, to get to the nut of the issue, the

4    legal disagreement that we have with counsel is I believe that

5    in this diversity of citizenship case, *Erie Railroad versus*

6    *Tompkins* requires that the Court recognize Texas State law

7    privileges, not just the attorney-client privilege but also the

8    party communications in anticipation of litigation privilege

9    which is gone -- goes under the same name of work product.  But

10   under Texas law, it's specifically defined as a privilege.  And

11   as the Court knows, Federal Rule 501, Federal Rule of Evidence

12   501 requires that the Court look to State law in determining

13   what is privileged and what is not.  There is no rule of

14   evidence that sets out attorney-client privilege.  That you

15   have to look at the Texas rules of evidence to find it.  Same

16   thing is true, there's a work product protection under the

17   Federal rules that is narrower than the Texas State work

18   product privilege, and it's that privilege which protects all

19   internal communications between Sandpiper and its agents

20   concerning the subject matter of the litigation.

21          **THE COURT:**  All right, Mr. Dennis?

22          **MR. DENNIS:**  Yes, your Honor.  Number one, it's our

23   position that Federal law applies to any work product

24   privilege, and we cited case law to that effect in our letter,

25   and that's the rule as, you know, best we understand it.

1              **THE COURT:**  Okay, then the first thing --

2              **MR. DENNIS:**  With regard --

3              **THE COURT:**  -- you all are going to have to do is

4    kind of brief that issue, whether State --

5              **MR. CHRISS:**  And I'm happy to do --

6              **THE COURT:**  -- law applies.

7              **MR. CHRISS:**  I'm happy to --

8              **THE COURT:**  Yeah.

9              **MR. CHRISS:**  -- do that, your Honor.

10             **THE COURT:**  Okay.  Go ahead, Mr. Dennis, sorry.

11             **MR. DENNIS:**  Secondly -- it's okay, thank you, your

12   Honor.  With regard to the documents as to which work product

13   is asserted, there are obviously documents among the Sandpiper

14   board of directors, there were board of director meeting

15   minutes, there are communications with the unit owners that are

16   after March 8th, 2018, and which relate to the facts of this

17   case and the issues of this case.  And those documents were

18   created for the purposes not of this litigation but of running

19   the building and repairing the building.  And indeed Mr. Chriss

20   and Sandpiper have actually produced already a number of those

21   documents.  It is not correct to say that because Sandpiper may

22   have been interviewing counsel on March 8th of 2018 that every

23   relevant document among Sandpiper board of directors, unit

24   owners, and the managing agent of Sandpiper is therefore work

25   product.  That's just -- it's just incorrect.  It can't make

 1    any --

 2            THE COURT:  Okay.

 3            MR. DENNIS:  -- sense, your Honor, because not every

 4    one of those documents is created for the purpose of this

 5    litigation.

 6            THE COURT:  Mr. Chriss, you're saying everything's

 7    protected (indisc.) --

 8            MR. CHRISS:  I'm saying the internal communications

 9    within my client and its agents, representatives, and

10    consultants concerning the subject matter of the litigation are

11    by definition privileged under Texas law.

12            THE COURT:  I think you all are talking about two

13    different things maybe.

14            MR. CHRISS:  I think so, too, Judge.

15            THE COURT:  Yeah.

16            MR. CHRISS:  I think so, too.

17            THE COURT:  So --

18            MR. DENNIS:  I don't think so, your Honor.  I

19    respectfully disagree.  I think we're talking about the same

20    thing.

21            THE COURT:  You want everything and Mr. Chriss is

22    saying some things are privileged, right?

23            MR. DENNIS:  Some -- and, yes, your Honor.  And in

24    fact some things may in fact be work product privilege.  I

25    don't disagree.

1      **THE COURT:**  Okay.

2      **MR. DENNIS:**  But for instance I have, because they've

3  been produced to me, board of director meeting minutes from

4  November of 2018 and October of 2018 which on the one hand

5  Mr. Chriss says are privileged, on the other hand, they've been

6  produced.  They are clearly internal documents as Mr. Chriss

7  describes them.  They relate to the issues in this case, and

8  they are --

9      **THE COURT:**  Okay, and he produced them.

10      **MR. DENNIS:**  -- manifestly not privileged.

11      **THE COURT:**  And he produced them, right?

12      **MR. DENNIS:**  But they are --

13      **MR. CHRISS:**  (Indisc.)

14      **MR. DENNIS:**  -- obviously thousands of others as to

15  which the position is just being taken with no explanation to

16  us that they are just privileged because they are after March

17  8th.  That's it.  That's all the --

18      **THE COURT:**  Yeah, and --

19      **MR. DENNIS:**  -- explanation that we've been provided.

20      **THE COURT:**  And that can't be.  I mean, it's not just

21  because they're after March 8th.  They have --

22      **MR. CHRISS:**  They're privileged because they're

23  internal communications.  It's exactly what I (indisc.) --

24      **THE COURT:**  Yeah.

25      **MR. CHRISS:**  -- Judge.

1          **THE COURT:**  Yeah.

2          **MR. CHRISS:**  I'm not -- I've given him invoices, I've

3  given him engineering reports, I've given him bills, I've given

4  him collations of bills.  I'm not claiming those things are

5  privileged.  I'm simply -- and counsel knows that we have told

6  him, it's in his most recent letter to me, his June 14th letter

7  to me, he knows -- he's asked me, do you think that maybe you

8  produced some of these meeting minutes inadvertently because

9  they're after your March the 8th, 2018 deadline, and I've told

10  him, yes, I need to go back and look at those meeting minutes

11  because that might have been a mistake because we produced

12  hundreds of thousands of documents in this litigation.  And so

13  he can't make up his mind.  On the one hand, I've waived the

14  privilege because I produced too much; on the other hand, I

15  haven't produced enough.  I mean, it's -- we just keep going

16  around in circles --

17          **THE COURT:**  Yeah, I know.

18          **MR. CHRISS:**  -- in this case.

19          **THE COURT:**  And we're going around in circles here,

20  too.  So for the pre-motion conference purposes then, we

21  addressed the Plaintiff's two matters before the Court, so I do

22  need to get a date when you might be able to respond,

23  Mr. Dennis, if you're going to be so inclined to do your

24  supplemental response to interrogatories seven, eight, ten, 11,

25  and 12, that way if you don't add anything or if you do add

31

1    something and it's not enough for the Plaintiffs, they know to

2    go ahead and file their motion to compel.  So when -- what

3    dates can you give me as to when you're going to look at

4    those --

5              **MR. DENNIS:**  Looking at that calendar right now, your

6    Honor.

7              **THE COURT:**  Okay.

8              **MR. DENNIS:**  We have July 17th just because we've got

9    the holiday intervening.

10             **THE COURT:**  Okay, --

11             **MR. CHRISS:**  That's --

12             **THE COURT:**  -- that's fine.  And so then we needed to

13   talk further on the protective orders.  Did you all get on the

14   same page on that?  You all are kind of talking and --

15             **MR. CHRISS:**  Well, we're --

16             **THE COURT:**  -- different --

17             **MR. CHRISS:**  We still need to talk about the reason

18   that I'm here in connection with the protective order.

19             **THE COURT:**  Okay.

20             **MR. CHRISS:**  And that is that after we responded to

21   65 requests for documents, what Lexington basically did was

22   they sent subpoenas, they served subpoenas -- well, actually

23   they sent the subpoenas to me and I agreed to accept service.

24   They subpoenaed the president and treasurer of the board of

25   directors of my client to produce the same documents that they

1    had already requested under Rule 34, and in addition a couple

2    of extra categories of documents, one of which was for them to

3    produce all of Sandpiper's communications with me, Ms. Snapka,

4    and any other lawyers in our --

5            **THE COURT:**  Okay, and I did see that.  I mean, you're

6    asking for attorney-client privilege, Mr. Dennis.

7            **MR. DENNIS:**  No, your Honor, we're not.

8            **THE COURT:**  Okay, but was -- did he quote you

9    correctly in the letter?  Did Mr. Chriss -- or where is it?

10           **MR. DENNIS:**  The --

11           **THE COURT:**  Let me find it.

12           **MR. CHRISS:**  I believe it's on page three of my

13   letter, your Honor.

14           **THE COURT:**  Let me get there because -- "all

15   documents concerning all communications between Sandpiper and,"

16   and then there's other things that go on among many others,

17   "Plaintiff's counsel."

18           **MR. DENNIS:**  Here is the issue, your Honor.  There

19   appear to be at least some documents which relate to the facts

20   of the case which were copied, for instance, to Mr. Chriss or

21   to another lawyer.  Now, we all know that that document would

22   not be privileged, even though it's copied to Mr. Chriss.  And

23   the same would apply to my client.  So that's what we're

24   looking for here.  I'm not asking Mr. Chriss to produce

25   communications with his client related to his retention or

1    other privileged matter.  That's the scope of this.

2         MR. CHRISS:  Judge, there are no --

3         MR. DENNIS:  Not of his --

4         MR. CHRISS:  I have no communication with my client

5    that isn't in the pursuit of my professional obligation and the

6    rendering of legal advice.  My client --

7         THE COURT:  Well, --

8         MR. CHRISS:  -- doesn't blindly --

9         THE COURT:  -- I mean, here --

10        MR. CHRISS:  -- copy me on correspondence just so

11   just for the heck of it.

12        THE COURT:  I just think that needs to be narrowed.

13   If that was in the subpoena, that was what was requested, then

14   the request is way too broad because you're covering attorney-

15   client privileged communications, right, Mr. Dennis?

16        MR. DENNIS:  Your Honor, the only way to -- I guess

17   if you wanted to, if one wanted to create an issue or a

18   dispute, one would read that that way.  But that is not what

19   we're looking for.

20        THE COURT:  Okay, does it read --

21        MR. DENNIS:  If it --

22        THE COURT:  -- as it states here?  Does it read as it

23   states here, because there's some -- you know, there's extra

24   language in there so that may clarify some things.  But what

25   Mr. Chriss put here at the top of page three is that you

34

1    requested all documents concerning all communications between

2    Sandpiper and Plaintiff's counsel.  There may be other things

3    in there.  And if you did that, that needs to be narrowed,

4    right, modified?

5              MR. DENNIS:  Well, --

6              MR. CHRISS:  I've handed the actual subpoena to --

7              MR. DENNIS:  Your Honor, we would modify it -- we

8    will look at it, your Honor, and narrow that request to the

9    extent that it includes documents with counsel.

10             THE COURT:  Right, okay.  What else on the

11   protective --

12             MR. DENNIS:  But --

13             THE COURT:  -- order, Mr. Chriss?

14             MR. CHRISS:  Your Honor, since --

15             MR. DENNIS:  Well, your --

16             THE COURT:  Oh, --

17             MR. CHRISS:  Go ahead.

18             THE COURT:  -- sorry, Mr. Dennis, yes?

19             MR. DENNIS:  Yes, your Honor.  We served the subpoena

20   on only three of the board members.  There are dozens of board

21   members who were involved in this matter over the years.  And

22   when we sent document request to the Sandpiper and we got back

23   the response, we asked them, well, did you, you know, look for

24   board member emails that are on their own computers?  And

25   Mr. Chriss said, well, we asked but those documents are not in

1    the possession, custody, or control of the Sandpiper.  So since

2    they're not in the possession, custody, or control of

3    Sandpiper, Sandpiper obviously is not obligated to produce the

4    documents that might be on a board member's computer and their

5    emails and so we sent three subpoenas to that small group of

6    folks to make sure that if there are documents that they

7    exchanged on their own computers that were not copied to the

8    management company, and it's not disputed that there are such

9    things, that we have a request out there for those.  That's all

10   this is.  If the documents are not in the possession, custody,

11   or control of Sandpiper, then the only other thing that I can

12   do is to subpoena a nonparty.  I don't understand what the

13   difficulty is or why that's inherently improper.

14           MR. CHRISS:  Well, it is improper, Judge.  And I

15   really -- I hate this he said/she said stuff.  I -- you know,

16   I -- this should never happen.  But now I have to say that's

17   not what happened.  What happened is I responded to the request

18   for production under Rule 34 that were directed to Sandpiper.

19   I asked all of the board members, all of the current board

20   members, to provide me with emails, any emails or

21   communications or documents that they did not copy the

22   management company on so that we wouldn't have it on our server

23   already.  I received some documents of that type and I produced

24   them.  What then happened is that without any notice to me and

25   without asking me about it, they simply issued subpoenas for

1    the president and treasurer and another former officer of my

2    client to produce the exact same documents that they had

3    already asked me to produce.  They didn't call me and say, hey,

4    by the way, I think there might be some other computers you

5    need to check or, did you go and check the -- they didn't do

6    that until after they subpoenaed me.  And then once they

7    subpoenaed me, I sent them a one word email which was:

8    "Really?"  You send me 65 requests for documents, I respond to

9    them, we discussed them, and then you just go behind my back

10   and subpoena the president of my client to get you the same

11   documents; why didn't you just ask me?  Well, because this is

12   not the way they do things.  And so what I'm asking is that the

13   subpoenas be quashed.  We've already decided that counsel's

14   going to have to go back and refine these categories of

15   documents.  I've given the Court the subpoena.  They're

16   overbroad.  I'm going to supplement my production of the Rule

17   34 request for documents with the documents that these three

18   individuals have provided me and our providing me.  But I've

19   already objected to the subpoenas.  Under the rules, the

20   witnesses have already objected to the subpoenas.  They're not

21   required to respond to the subpoenas.  One of them is out of

22   the country on vacation.  And I'm just asking that they be

23   quashed because what's supposed to happen -- and I never --

24   again, I'm being misquoted.  What I told counsel after he

25   subpoenaed these people, he asked me, did you go and check

37

1   their computers.  And my response was, I -- this is after they

2   subpoenaed me.  I said, yes.  I did not -- I said, yes, I asked

3   them for documents but I cannot go check their computers

4   because their computers are not in the custody, control, or

5   possession of my client.

6          **THE COURT:**  Okay, so on the -- did you file a motion

7   to quash the subpoenas?

8          **MR. CHRISS:**  I did not file a --

9          **THE COURT:**  Okay.

10         **MR. CHRISS:**  -- motion to quash the subpoenas.  The

11  reason I'm -- the only reason I'm here asking permission is

12  because I'm a little concerned given the way this litigation is

13  going that a mere objection is not sufficient to preserve my

14  claims of privilege and so I would like to file a motion for

15  protection on behalf of Sandpiper, my client, even though

16  they're not the deponent that's been subpoenaed.  And the rules

17  say I'm supposed to file that in the districts where compliance

18  is required.  And I -- so I -- and I just didn't want to do

19  that, Judge, without checking with you first because of the way

20  that your orders read.

21         **THE COURT:**  Yeah, yeah, yeah, no, I think you need to

22  file that and to give the defense a chance to respond and --

23         **MR. CHRISS:**  Okay.

24         **THE COURT:**  -- then I can sort it out.

25         **MR. CHRISS:**  All right, then that's what we'll do.

1          **THE COURT:**  Yes.  So we've addressed the motion to

2  compel, I mean at least as to how we're going to go along here

3  for now, correct, Mr. Chriss?

4          **MR. CHRISS:**  Yes, your Honor.

5          **THE COURT:**  You're going to file a motion to quash.

6          **MR. CHRISS:**  Yes.  The Court --

7          **THE COURT:**  Yes.

8          **MR. CHRISS:**  -- has dealt with all of the matters I

9  wanted to talk about.

10         **THE COURT:**  Okay.  And, Mr. Dennis, what do you need

11  from me?

12         **MR. DENNIS:**  Well, your Honor, we think that we

13  should be allowed to file a motion to compel on the issues

14  identified in my June 224th letter to the Court.

15         **THE COURT:**  Okay, go ahead.  It's my understanding

16  you all have already conferred, you all talked about it.  And -

17  -

18         **MR. CHRISS:**  Yes.

19         **THE COURT:**  -- you all can continue conferring.  File

20  your motion.  Here's the thing, is I hate on -- we need to set

21  time limits or so because if we just go with the local rules

22  and respond 21 days, that just drags out discovery.  So you all

23  want to shorten timeframes in terms of responding to motions to

24  compel?

25         **MR. CHRISS:**  Happy to do that, your Honor.

39

1          **THE COURT:**  Okay.  So --

2          **MR. CHRISS:**  Can we have ten days instead of 21?

3          **THE COURT:**  Yes, let's do that, respond within ten

4    days.  And that just gets it on the Court's calendar a little

5    quicker and we can reconvene.  Mr. Dennis, that sound

6    appropriate to you?

7          **MR. DENNIS:**  Your Honor, I don't -- yes.  Could we

8    just set dates to make motions?  Once again, my only concern --

9          **THE COURT:**  Well, --

10          **MR. DENNIS:**  -- is that we have --

11          **THE COURT:**  -- the problem is I thought you were

12   going to go back and look at the contention interrogatories and

13   that you hopefully are going to respond to what Mr. Chriss

14   finds appropriate.  If you don't, he's going to file a --

15          **MR. DENNIS:**  Okay.

16          **THE COURT:**  -- motion then, so he doesn't need to

17   file it now.

18          **MR. DENNIS:**  Okay, very --

19          **THE COURT:**  Right?

20          **MR. DENNIS:**  Thank you, your Honor.

21          **THE COURT:**  Okay.  What about the briefing on --

22          **MR. DENNIS:**  Understood.

23          **THE COURT:**  What about briefing on the privilege

24   regarding the Federal law and the State law in terms of the

25   privilege; do you all want to file that when?

40

1          **MR. DENNIS:**  If we could do it after the July 4th

2    holiday, your Honor, --

3          **THE COURT:**  Okay.

4          **MR. DENNIS:**  -- I would appreciate it.

5          **THE COURT:**  So within two weeks?

6          **MR. DENNIS:**  Two weeks of today is (indisc.) can we

7    have until July 12, your Honor?

8          **THE COURT:**  That's fine.  Mr. Chriss, --

9          **MR. CHRISS:**  Yes, your Honor, that's fine.

10         **THE COURT:**  -- is that all right?  Okay, so what else

11   do I need to do today on the pre-motion conference?  Nothing

12   else from the Plaintiff it sounds like.  Mr. Dennis?

13         **MR. DENNIS:**  I -- just checking, your Honor, to make

14   sure.  I think we're covered, your Honor.

15         **THE COURT:**  And you're still going to look at the --

16   modifying the subpoenas, right, in terms of what was requested,

17   right, Mr. Dennis?

18         **MR. DENNIS:**  I have a note with regard to the scope

19   of the request to counsel.

20         **THE COURT:**  Yes.

21         **MR. DENNIS:**  And we're going to go back and look at

22   that, yes, your Honor.

23         **THE COURT:**  Okay.

24         **MR. CHRISS:**  I --

25         **THE COURT:**  Nothing else?

1          **MR. CHRISS:**  Is that -- are those the subpoenas that

2   I'm fixing to file a motion to quash or (indisc.)

3          **THE COURT:**  Well, I know.  That's why I was asking

4   because I thought he was going to go back.  Are you going to go

5   back and look at the subpoena itself?  Maybe we need a deadline

6   to see if Mr. Chriss needs to file a motion to quash.

7          **MR. CHRISS:**  Judge, I'm just -- can I just --

8          **THE COURT:**  Just file it, go ahead.

9          **MR. CHRISS:**  -- go ahead and file my motion?  I'll

10  just file it because I --

11         **THE COURT:**  And you all can clean it up and confer

12  afterward, you know --

13         **MR. CHRISS:**  Right, exactly.

14         **THE COURT:**  -- you're just streamlining it --

15         **MR. CHRISS:**  That's exactly.

16         **THE COURT:**  -- for the Court anyway.  So he's going

17  to go ahead and file the motion to quash.  Okay, then I think

18  we --

19         **MR. DENNIS:**  Okay, can we just have a date for that,

20  your Honor?

21         **MR. CHRISS:**  I'll file a motion to quash this week.

22         **MR. DENNIS:**  Okay.

23         **THE COURT:**  Okay.  Anything else, Mr. Dennis?

24         **MR. DENNIS:**  Nothing from this end, your Honor.

25         **THE COURT:**  All right, then I'll wait on the motions,

42

1 and you all can be excused.

2          **MR. CHRISS:**  Thank you, your Honor.

3          **THE COURT:**  Thank you.

4          **MR. DENNIS:**  Thank you, your Honor.

5          **THE COURT:**  Yes.

6       **(This proceeding was adjourned at 12:25 p.m.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>July 22, 2019</u>

                Signed                                              Dated


                        *TONI HUDSON, TRANSCRIBER*