**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **SANDPIPER CONDOMINIUM** | § | |
| **COUNCIL OF OWNERS, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  2:18-CV-00414** |
| | § | |
| **LEXINGTON INSURANCE COMPANY** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES**
**AND SUPPLEMENTAL DISCLOSURES**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW SANDPIPER CONDOMINIUM COUNCIL OF OWNERS, INC.

Plaintiff and pursuant to Rules 26(a)(1)(A) and 26(a)(2) of the Federal Rules of Civil

Procedure, make these supplemental damage disclosures, expert disclosures, and

designations of person who may provide expert testimony pursuant to Rules 702, 703, or

705 of the Federal Rules of Evidence.

### I.        RETAINED EXPERTS

1.     Mike Krismer
       517 Ronson Dr.
       Corpus Christi, TX 78412

Mr. Krismer's written report, which contains or references the facts, data and

information considered and relied upon by Mr. Krismer, the exhibits that Mr. Krismer

may use to summarize or support his opinions, and his qualifications and publications are

1

being provided to opposing counsel electronically contemporaneously herewith. He will testify as to the cause and origin of the hurricane damage to the building and the proper scope and method and costs of repairs, including code upgrades, including consequential damage caused by Defendant. He will also testify that Defendant's estimates and scopes of work or damage were unreasonable and grossly inadequate, and that there has been no reasonable basis for Defendant's continued refusal to pay any policy benefits for code upgrades. Mr. Krismer's hourly rate is $200.00.  Mr. Krismer has testified by deposition or in trial within the last four years and a list of cases is included in the materials contemporaneously provided to opposing counsel. Plaintiff incorporates all such material herein by reference.

      2.    Peter de la Mora, P.E.
           PE Service Engineers, LP
           10497 Town and Country Way, Suite 930
           Houston, TX 77024
           713/523-0104

Mr. de la Mora's written report, which contains the facts, data and information considered and relied upon by Mr. de la Mora, the exhibits that Mr. de la Mora may use to summarize or support his opinions, and his qualifications, publications, and statement of his compensation, are being provided to opposing counsel electronically contemporaneously herewith.  He will testify as to the cause and origin of the hurricane damage to the building and the proper scope and method of repairs, including code upgrades. Mr. de la Mora has testified by deposition or in trial within the last four years and a list of cases is included in such materials.  Plaintiff incorporates herein by reference Mr. de la Mora's expert report including all subparts and attachments thereto.

3.    Scott Meares
      P&M Commercial Operations, LLC
      P. O. Box 2362
      Corpus Christi, TX 78403
      361/945-9230

Mr. Meares's written report, which contains the facts, data and information considered and relied upon by Mr. Meares, the exhibits that Mr. Meares may use to summarize or support his opinions, and his qualifications, publications, and statement of his compensation, is being provided to opposing counsel electronically contemporaneously herewith.  He will testify as to the cause and origin of the hurricane damage to the building and the proper scope and method and costs of repairs, including code upgrades and expected and reasonable times for reconstruction and completion and the consequential damage done by Defendant. He will testify that a proper and complete estimate of covered hurricane damage to the building should have been in excess of $20 million, as per his report, and that Defendant's estimates and scopes of work or damage were unreasonable and grossly inadequate. Mr. Meares has not testified by deposition or in trial within the last four years or else a list of cases is included with such materials. Plaintiff incorporates herein by reference Mr. Meares's expert report including all subparts and attachments thereto.

4.    Art Boutin
      4507 Walton Heath Circle
      Austin, TX 78747

Attached as Exhibit B is Mr. Boutin's written report, which contains the facts, data and information considered and relied upon by Mr. Boutin, the exhibits that Mr. Boutin may use to summarize or support his opinions, and his qualifications, publications, and

3

statement of his compensation, is being provided to opposing counsel electronically contemporaneously herewith.  Mr. Boutin has testified by deposition or in trial within the last four years and a list of cases is included with such materials.   His rate of compensation is $150 per hour. Plaintiff incorporates herein by reference Mr. Boutin's expert report including all subparts and attachments thereto. He will testify to appropriate and reasonable depreciation percentages to apply in adjusting and estimating Plaintiff's insurance claims.

> 5.   Keith Adamson, CPA, CGMA
>       Adamson & Company
>       4101 S. Alameda
>       Corpus Christi, TX 78411

Mr. Adamson's written report, which contains the facts, data and information considered and relied upon by Mr. Adamson, the exhibits that Mr. Adamson may use to summarize or support his opinions, and his qualifications, publications, and statement of his compensation, is being provided to opposing counsel electronically contemporaneously herewith.   Plaintiff incorporates herein by reference Mr. Adamson's expert report including all subparts and attachments thereto.

> 6.   Benigno (Trey) Martinez, Attorney at Law
>       Law Office of Benigno Martinez
>       1201 E. Van Buren
>       Brownsville, Texas 78520
>       956/550-4868

Mr. Martinez's written report, which contains the facts, data and information considered and relied upon by Mr. Martinez, the exhibits that Mr. Martinez may use to summarize or support his opinions, his qualifications and publications and his CV, is

being provided to opposing counsel electronically contemporaneously herewith.   Mr. Martinez's non-contingent hourly rate is reflected in his report.   Mr. Martinez has provided deposition testimony or trial testimony in the past four years in the following matters:   ***In the Matter of DRV, Minor Child,*** Cause No. 2015-DCL-00080, 5.29-6.1.2018; ***Infinite Play vs. Certified Value, Inc. d/b/a Kidsteam & John Hampton***, Cause No. 2016-DCV-2340, 5.7-5.18.2018; ***David Atkinson vs. Sunchase HOA & Board***; Cause No. 2013-DCL-7453,7.31-8.15.2017; ***Dan King vs. Brian Childs***, Cause No. 2016-ccv-61234-1, 5.13-5.15.2019; ***Galvotec Alloys vs. GAUS Anodes***, Cause No. 7:13-cv-00664, 4.5-4.6.2016.

## II.   **NON-RETAINED EXPERTS**

2.     Plaintiff may call to testify at trial the individuals, contractors, workmen, insurance personnel and consultants, and condominium owners listed in Plaintiff's Rule 26 Initial Disclosures, most of whom have expert opinions with respect to the cause and/or origin of damage and the reasonableness and necessity of their work and charges or work and charges done to their units, or else have opinions on insurance matters, such as underwriting, coverage, adjusting, bad faith, and reserves.  Additionally, Plaintiff may call to testify at trial the following individuals listed below.  These individuals have not been retained or specially employed to provide expert testimony in the case, nor are they persons whose duties as an employee of Plaintiff regularly involve giving expert testimony. The contractors will testify that the damage they worked on, evaluated, or estimated was caused by Hurricane Harvey and perils covered under the Defendant's policy, and that the cost they charged or estimated for their work was reasonable in

amount and made reasonably necessary by such damage. The underlying material or facts relied upon by them is their personal inspection of the building and their familiarity with construction and with the charges made for like kind and quality services in this region at the relevant time, as well as any other matters set out in their respective reports, bills, estimates, records, or depositions produced or to be produced in this litigation:

(A)   William J. Chriss, Attorney at Law
      The Snapka Law Firm
      606 N. Carancahua, Suite 1511
      Corpus Christi, TX 78401

Mr. Chriss's written report, which contains the facts, data and information considered and relied upon by Mr. Chriss were provided to Mr. Martinez, and Mr. Chriss's qualifications and publications are listed in his CV contemporaneously provided to opposing counsel. Mr. Chriss's non-contingent hourly rate of compensation is $750.00. His contingent rate of compensation and that of other firm members is higher. Mr. Chriss has not provided deposition testimony or trial testimony in the past four years. His attorney fee report, the relevant fee contract, and a redacted time sheet are being provided to opposing counsel electronically contemporaneously herewith.

(B)   Lee Little, Lee Little's Remodeling & Windstorm Protection
      135117 Ducat Court
      Corpus Christi, TX 78418;
      361-442-4352

Will testify to the cause and origin of window and door damage to Sandpiper and the reasonableness and necessity of repairs and costs he has specified, performed, or estimated.  His estimates and/or invoices and/or reports have been produced.

6

      (C)      Scott Green, Harvest Interiors & Flooring
                    2621 State Highway 361
                    Port Aransas, TX 78373;
                    361-749-7847

Will testify to the cause and origin of window and door damage to Sandpiper and the reasonableness and necessity of repairs and costs he has specified, performed, or estimated.  His estimates and/or invoices and/or reports have been produced.

      (D)      Thyssenkrupp Elevator Corporation
                    P. O. Box 933004
                    Atlanta, GA 31103-30044
                    including Kathleen Davidson, Ron Griffin, K. Dietrich, Richard Arispe, Jr., and any and all agents, partners, representatives, and/or employees who have conducted inspections and/or repairs of the elevators and/or their custodians of records.

Will testify to the cause and origin of elevator and associated damage to Sandpiper and the reasonableness and necessity of repairs and costs they have specified, performed, or estimated.  Their estimates and/or invoices and/or reports have been produced.

      (E)      Wayne Parker and/or Butch Ramirez
                    JACO Roofing & Construction, Inc.
                    1725 S. Velasco, Angleton, TX 77515
                    979-265-6101.

Will testify to the cause, origin, and effects of roof damage to Sandpiper and the reasonableness and necessity of repairs and costs JACO has specified, performed, or estimated.  JACO's estimates and/or invoices and/or reports have been produced.

      (F)      Chuck Wilson, Taylor Made's Construction
                    3748 U.S. Hwy. 59 North
                    Livingston, TX 77351
                    936-327-1960

Will testify to the cause, origin, and effects of damage to Sandpiper and the reasonableness and necessity of repairs and costs Taylor Mades has specified, performed, or estimated.  His estimates and/or invoices and/or reports have been produced. He is also expected to testify that the scope or cost of repairs dictated by Lexington was unreasonably limited.

      (G)    Kane Carpenter and/or James Adams
               Taylor Made's Construction
               3748 U.S. Hwy. 59 North
               Livingston, TX 77351
               936-327-1960

Will testify to the cause, origin, and effects of damage to Sandpiper and the reasonableness and necessity of repairs and costs Taylor Mades has specified, performed, or estimated.  His estimates and/or invoices and/or reports have been produced. He is also expected to testify that the scope or cost of repairs dictated by Lexington was unreasonably limited.

      (H)    Frank Konvicka, Onsite Superintendent
               Subcontracted by Taylor Made's Construction
               Telephone No.: 210-422-5980

Will testify to the cause, origin, and effects of damage to Sandpiper and the reasonableness and necessity of repairs and costs Taylor Mades has specified, performed, or estimated.  His estimates and/or invoices and/or reports have been produced. See his deposition for additional information concerning his opinions and factual observations. He has testified and is expected to testify that the scope or cost of repairs dictated by Lexington was unreasonably limited.

(I)    Eric Althouse, Air Intellect, LLC
       30931 Whitlock Dr.
       Wesley Chapel, Florida 33544
       813-388-2325.

Performed a moisture assessment at Sandpiper at Mr. Krismer's request. To the extent Mr. Krsimer relied upon such assessment, its findings are reflected in Mr. Krismer's report.  He will also testify as to the reasonableness and necessity of his work as part of the investigation of damage caused by Hurricane Harvey. His invoice and resume are provided contemporaneously herewith.

(J)    Ruben Peralez, II, P.E.,
       Hanson Professional Services, Inc.
       4501 Gollihar Road
       Corpus Christi, Texas 78411
       361-814-9900.

See his report of November 2018 already produced.

(K)    Lewis B. Shrier, P.E.
       Hanson Professional Services, Inc./Naismith Engineering
       4501 Gollihar Road
       Corpus Christi, Texas 78411
       361-814-9900.

Will testify to the cause, origin, and effects of damage to Sandpiper and the reasonableness and necessity of repairs specified, performed, or estimated.  His reports and relevant Hanson records have been produced. He will also testify to Lexington's attempts to circumvent the requirements of city codes in controlling the scope of repairs to the Sandpiper.

    (L)    Mitchell Sanchez
               Hanson Professional Services
               1525 S. Sixth St.
               Springfield, IL 62703

His reports and relevant Hanson records have been produced. He will also testify to Lexington's attempts to circumvent the requirements of city codes in controlling the scope of repairs to the Sandpiper.

    (M)    Alonzo Garza and/or Lupe Garza
               Baldwin Roofing
               642 Omaha
               Corpus Christi TX 78408
               361-888-7373

Will testify to the cause, origin, and effects of roof damage to Sandpiper and the reasonableness and necessity of repairs and costs JACO or Baldwin have specified, performed, or estimated. Such estimates and/or invoices and/or reports have been produced.

    (N)    John Moreno
               All Secure Alarm Systems
               3163 Ash St.
               San Diego, CA 92102
               877-247-7760.

Will testify to the cause and origin of alarm system damage to Sandpiper and the reasonableness and necessity of repairs and costs he has specified, performed, or estimated, including upgrades required by codes.  His estimates and/or invoices and/or reports setting forth a summary of such matters have been produced.

    (O)    Ryan Patterson
               Patterson Remodeling, LLC
               2716 N. Ogden Rd., #101
               Mesa, AZ 85215

Will testify to the cause, origin, and effects of damage to Sandpiper and the reasonableness and necessity of repairs and costs he has specified, performed, or estimated.  His estimates and/or invoices and/or reports have been produced. He is also expected to testify that the scope or cost of repairs dictated by Lexington was unreasonably limited.

      (P)     Arnold Sanchez,
Coastal Bend Siding and Windows, LLC
745 Cantwell Ln.
Corpus Christi, TX 78408
including any and all agents and/or employees who have conducted inspections and/or repairs of the windows and building and/or their custodians of records.

Will testify to the cause and origin of window and door damage to Sandpiper and the reasonableness and necessity of repairs and costs they have specified, performed, or estimated.  Their estimates and/or invoices and/or reports have been produced.

      (Q)     CCMS, Inc.
202 S. Alister
Port Aransas, TX 78373
including Charles W. Crawford, Jr., Chuck Crawford, Sasha Greves, Kathy Vana, Casey Patterson, and any and all agents, partners, representatives, and/or employees.

May testify to management procedures at Sandpiper and the calculation of income earned or lost as a result of Hurricane Harvey.

      (R)     Architectural Division 8
220 Denton Dr.
Austin, TX 78758
including any and all agents, partners, representatives, and/or employees.

Will testify to the cause and origin of door damage to Sandpiper and the reasonableness and necessity of repairs and costs they have specified, performed, or estimated.  Their estimates and/or invoices and/or reports have been produced.

> (S)   Rick Guerra-Prats
> Guerra-Prats Construction
> 14621 S Padre Island Dr. # 100
> Corpus Christi, TX 78418
> (361) 949-4800

Appointed appraiser. May testify to his evaluation and estimate of the cause and origin of the hurricane damage to the building and the proper scope and method and costs of repairs, including code upgrades.

> (T)   Umpire appointed for appraisal; identity currently unknown.

May testify to his evaluation and estimate of the cause and origin of the hurricane damage to the building and the proper scope and method and costs of repairs, including code upgrades.

> (U)   Allen Borden, Wally Goodman, Wiki Bai
> Borden Insurance
> 210 S. Carancahua, 4th Floor
> Corpus Christi, TX 78403-1066

 May testify to the routine practice with respect to, and definitions of terms such as, "reserve," "underwriting," and the extent to which Lexington's handling of this claim was unreasonable. May also testify to loss reserves, their meaning and significance, and the significance of underwriting or other inspections of the building before the storm by Lexington or its agents or others.

12

(V)    NSM Ins. Group
555 North Lane, Suite 6060
Conshohocken, PA 19428
and any and all agents, partners, representatives, and/or employees.

May testify to the routine practice with respect to, and definitions of terms such as, "reserve," "underwriting," and the extent to which Lexington's handling of this claim was unreasonable. May also testify to loss reserves, their meaning and significance, and the significance of underwriting or other inspections of the building before the storm by Lexington or its agents or others.

(W)    Philip B. Wise or Anne Tiemeyer
Insgroup, Inc.
5151 San Felipe, 24th Floor
Houston, TX 77056
713-541-7272

May testify to the routine practice with respect to, and definitions of terms such as, "reserve," "underwriting," "loss run," and the extent to which Lexington's handling of this claim was unreasonable. May also testify to loss reserves, their meaning and significance, and the significance of underwriting or other inspections of the building before the storm by Lexington or its agents or others.

(X)    Mark Leventhal, John O'Keefe, Madison Gillen, David Hooper, J. Chris Leitz, Pete Moreno, Mark Stumpff,  and other employees and agents of AIG, York, and/or Lexington; via their attorney in this case.

May testify to the routine practice with respect to, and definitions of terms such as, "reserve," "underwriting," "loss run," and the extent to which Lexington's handling of this claim was unreasonable. May also testify to loss reserves, their meaning and

significance, and the significance of underwriting or other inspections of the building before the storm by Lexington or its agents or others.

      (Y)    Tina Archer
              Preferred Reports, LLC
              102 Asma Blvd., Ste 402
              Lafayette, LA 70508
              (337) 347-9855.

May testify to the routine practice with respect to, and definitions of terms such as, "reserve," "underwriting," "loss run," and the extent to which Lexington's handling of this claim was unreasonable. May also testify to loss reserves, their meaning and significance, and the significance of underwriting or other inspections of the building before the storm by Lexington or its agents or others.

3.     Plaintiff reserves the right to elicit by way of cross-examination opinion testimony from any and all experts designated and called by Defendant.  Plaintiff hereby expresses its intention to possibly call any witnesses associated with adverse parties including the experts of Defendant.

4.     Plaintiff reserves the right to call undesignated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of the evidence by Defendant.

5.     Plaintiff reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

6.      Plaintiff reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not violate a Court Order or the Federal Rules of Civil Procedure.

7.      Plaintiff hereby designates, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial.  In the event a present or future party designates an expert, but then is dismissed for any reason from the suit or fails to call any designated expert, Plaintiff reserves the right to designate and/or call any such party or any such experts previously designated by any party.

8.      Plaintiff reserves the right to supplement this designation with additional designations of experts within the time limits imposed by the court or any alterations of same by subsequent court order or agreement of the parties, or pursuant to the Federal Rules of Civil Procedure and/or the Federal Rules of Civil Evidence.

## III. **SUPPLEMENTAL RULE 26 (a)(1)(A) DISCLOSURES**

3.      A computation of each category of damages claimed, and unprivileged documents not protected from disclosure upon which such computation is based:

Plaintiff contends that the covered property loss to the building caused by Hurricane Harvey is in excess of $20 million on a replacement cost basis. Specifically, Plaintiff contends that an appropriate scope and cost estimate done reasonably soon after the storm results in a repair cost of $22,483,305.24 without

upgrading glass windows and doors to impact resistant glass. Details may be found in the reports of the experts Krismer, De la Mora, and Meares. The ACV loss can be calculated as $20,011,031.69 by subtracting the appropriate depreciation of $2,473,273.55 calculated by Plaintiff's expert consultant Art Boutin. Of this amount, Plaintiff's expert reports have identified code upgrades exceeding the $1 million ICC policy limit by $678,626.36. Based on the most recent expert reports, Plaintiff believes that every unit entry door, all gulf side windows and sliding doors, and approximately half the bay side fenestration were damaged by the storm. Four different third-party experts have evaluated the window and door systems and provided damage reports supporting the Association's damage claims. In addition, substantial interior demolition and repair was required.  The Lexington policy has a $4.3115 million deductible, leaving a covered ACV loss conservatively estimated of at least $15,699,531.69, of which Lexington has only paid $3,153,103.12, and of which Plaintiff's expert reports have identified $678,626.36 in code upgrades exceeding the ICC policy limit, leaving a remaining ACV claim owed of $11,867,802.21 and a net claim of $14,341,075.76 on a full replacement cost basis. Lexington has acknowledged that covered perils from Hurricane Harvey caused "interior water damage to more than 90% of the building interior," and that "damaged porous materials would need to be treated as Category 3 black water and removed and discarded in compliance with S500 standards," and that it "expects to pay," but has not yet paid an additional $1 million on such claim in code upgrades.

16

Also, based upon the same expert reports, Lexington's unreasonable and inadequate investigation and unreasonable delay and other wrongful conduct have resulted in additional repair costs being incurred due to repairs being performed out of proper sequence. This damage is quantified by Plaintiff's experts at and additional $550,000 in repair costs, as per the reports of Mr. Krismer and Mr. Meares.

In addition, since the policy limit for loss of income was exhausted some time ago, but sufficient funds have yet to be received to restore the building, uninsured income loss has continued to be sustained, as well as the need to borrow funds to make repairs, and the retention of experts to determine the true extent of the damage to the building and the proper scope of repair and associated cost. The resulting income loss has been estimated by CPA Keith Adamson at $4,483,575.8l, which Plaintiff alleges to be recoverable either because Defendant is estopped to assert its policy limit, or as consequential damages from Lexington's wrongful conduct.  Plaintiff's investigation cost totals over $60,000. See the bills attached or already produced of Mike Krismer, Peter de la Mora, Scott Meares, and Air Intellect as well as income loss documentation produced contemporaneously herewith and previously provided to Defendant.

Documents in support of this damage calculation have already been produced or are contemporaneously produced with this supplement and/or in connection with Plaintiff's designation of experts.

In addition, Plaintiff seeks statutory damages pursuant to Article 542 of the Texas Insurance Code, computed at 18% per annum if written notice of the relevant insurance claim was received before September 1. 2017, and at the rate of 10% per annum if written notice of the relevant insurance claim was received on or after September 1, 2017. Such damages should be calculated from no later than 60 days after the insurer's refusal to pay without requesting any proof of loss or additional items, documents or forms reasonably requested and necessary to decide whether to accept or reject a claim. Plaintiff contends this occurred on or about 60 days after receipt by Defendant of Plaintiff's Proof of Loss on June 28, 2018, which is to say August 27, 2018. If the Defendant's allegation is correct that it first received notice of claim on September 1, 2017, such statutory damages associated with the ACV claim aggregate to $1,384,569.01 as of October 27, 2019. If the Defendant first received notice of claim through its agents before September 1, 2017, such statutory damages associated with the ACV claim aggregate to $2,492,224.22 as of October 27, 2019. If the Defendant's allegation is correct that it first received notice of claim on September 1, 2017, such statutory damages associated with the RCC claim aggregate to $1,673,115.94 as of October 27, 2019. If the Defendant first received notice of claim through its agents before September 1, 2017, such statutory damages associated with the RCC claim aggregate to $3,011,453.81 as of October 27, 2019.

In any event, defendant is alleged to be liable or the difference between the 10% and the 18% penalty due to the facts and upon the basis set forth in Plaintiff's most recent complaint on file herein.

Plaintiff also seeks pre-judgment interest at the legal rate computed as provided by law. The current legal rate is of 5.25% per annum.

In addition, Plaintiff seeks attorney fees based on a contingent hourly rate of between $2,250 to $3,000 per hour for the time of Mr. Chriss and Ms. Snapka, and a rate of $1,500 for other assisting attorneys based on a non-contingent beginning rate of $750 to $900 per hour and $500 per hour for such attorneys respectively. See contract contemporaneously produced. Plaintiff also maintains attorney time records that will be produced after being redacted to exclude privileged information, including the work product and mental impressions of its attorneys recorded in anticipation of litigation. Plaintiff's attorney fee expert has opined that attorney fees recoverable in this case total $7,200,000 to $8,000,000, plus an additional $720,000 to $1,080,000 on appeal to the initial court of appeal, and $720,000 more if review is granted by the Supreme Court, up to a total of $35% to 40% of the plaintiff's gross recovery, depending upon how significant the jury believes the case to be, how good a job they feel the attorneys have done in presenting it, and how difficult the defense lawyers have made it or are likely to continue to make it.

In addition, Plaintiff seeks additional damages of up to two times its actual damages as determined within the discretion of the jury pursuant to Article 541, et.

seq., of the Texas Insurance Code, or else exemplary damages as determined within the discretion of the finder of fact.

Plaintiff reserves the right to supplement these disclosures throughout and upon completion of discovery.

DATED: October 29, 2019.

Respectfully submitted,

**THE SNAPKA LAW FIRM**
606 N. Carancahua, Suite 1511
P.O. Box 23017
Corpus Christi, Texas 78403
Telephone: (361) 888-7676
Facsimile: (361) 884-8545

*/s/ William J. Chriss*
**William J. Chriss**
State Bar No. 04222100
Email: wjchrisspc@gmail.com
**Kathryn Snapka**
State Bar No. 18781200
Email: ksnapka@snapkalaw.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that, on October 29, 2019, a true and correct copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure as follows:

Raymond L. Gregory II
EGGLESTON & BRISCOE, LLP
4800 Three Allen Center
333 Clay Street
Houston, Texas 77002
rlg2@egglestonbriscoe.com

&

Wayne R. Glaubinger
James M. Dennis
Diana McMonagle
One New York Plaza
New York, NY 10004
WGlaubinger@moundcotton.com
JDennis@moundcotton.com
DMcMonagle@moundcotton.com

**ATTORNEYS FOR DEFENDANT LEXINGTON INSURANCE COMPANY**

_/s/ William J. Chriss_____
**William J. Chriss**
**Attorney-In-Charge**